Moncure, J.
It was properly conceded, in the argument of this case, on the one hand, that R. F. Darracott had incurred a forfeiture of his lease from John *281 ston by subletting the demised premises to John Darracott | and on the other, that the forfeiture might be waived by the lessor: And the only question to decided is, Whether it was so waived ?
The underletting in this case was without the consent of the lessor, either written or parol. And a forfeiture for assigning or subletting without license may be waived, whether the license be required by the terms of the lease to be in writing or hot. Goodright v. Davids, Cowp. R. 803; Roe v. Harrison, 2 T. R. 425, 430. It is unnecessary, therefore, to consider whether this case comes within the operation of the Code, p. 506, § 18; which declares that “ in a deed of lease a covenant by the lessee that ‘ he will not assign without license,’ shall have the same effect as a covenant that the lessee will not, during the term, assign, transfer or set over the premises or any part thereof, to any person without the consent in writing of the lessor, his representative or assigns.”
Then, as to the question of waiver of the forfeiture. The doctrine on this subject is thus laid down by an elementary writer: “ The re-entry resting, as we have seen, in the election of the lessor, he may enforce or waive his right at his pleasure. And as forfeitures, to use the phrase of the books, are odious in law, slight acts on his part have been deemed sufficient to amount to a waiver. Indeed, it may be stated as a general rule, that any recognition of a tenancy subsisting after the right of entry has accrued, and the lessor has had notice of the forfeiture, will have that effect.” 2 Platt on Leases 468. To the same effect is the law laid down by other writers; and the cases cited, so far as I have seen, seem fully to sustain them.
There is, indeed, no conflict of authority in regard to the principle which governs the case. The only apparent conflict is in its application to individual cases. The principle simply is, that if the lessor, with *282 knowledge of the forfeiture, do any act affirming' the tenancy or recognizing its continuance, he thereby the forfeiture. Whether the act, in a given case> have effect, is sometimes a question of difficulty. The acceptance of rent, eo nomine, gene-rally, if not always, has that effect; because it can rarely, if ever, occur without the relation of landlord and tenant, and is an admission that the tenancy is then subsisting. Archbold 97, citing Pennant's Case, 3 Coke 64 b; Harvey v. Oswald, Cro. Eliz. 553, 572; Moore 456; 2 Anderson 90; Arnsby v. Woodward, 6 Barn. & Cress. 519, 13 Eng. C. L. R. 241. The same may be said of a distress for rent. Id.; and also of an absolute and unqualified demand of rent, whatever may be the secret motive of the lessor in demanding it. 2 Platt on Leases 468. Generally, the lessor, by merely being passive, will not waive the forfeiture. It is not enough that he knows of the breach without availing himself of his right of re-entry. The act by which the forfeiture is waived must, as we have seen, amount to an affirmance of the tenancy or a recognition of its continuance. Comyn 334; Archbold 97 ; Doe v. Allen, 3 Taunt. R. 78. Though if, by his acquiescence, he induce the tenant to incur expense in making improvements or otherwise, that is a circumstance from which, it seems, a jury might infer a waiver. Id.
There is a case, however, which was much relied on by the counsel for the plaintiff in error as an authority to show that the mere acceptance of rent is not of itself a waiver, but matter of evidence only to be left to the jury. I mean the case of Hoe v. Batten, Cowp. R. 243. That was not a case of forfeiture. The question was, Whether the landlord, by receiving rent, had waived his notice to quit, and created a new tenancy for a year; or had merely received an occupation rent, instead of double rent to which he was *283 entitled under the stat. 4 Geo. 2. It was held to be a question of intention for the consideration of the jury on all the evidence. Aston, J. expressly between that case and a case of forfeiture.
But Doe v. Batten was cited, and the doctrine therein laid down disapproved by the Court of king’s bench, in Goodright v. Cordwent, 6 T. R. 219. Lord Kenyon, C. J. in delivering his opinion in that case, the other judges concurring, said, “If the defendant had paid, and the lessor of the plaintiff had received the money as a satisfaction for the injury done by the defendant in continuing on the plaintiff’s land as a trespasser, then the plaintiff might have recovered in ejectment. But if it were paid eo nomine as rent, and received as such, and the jury have found that it was so, I cannot assent to the doctrine laid down in the cases cited, that the receipt of rent accruing after the expiration of the notice to quit is not a waiver of it i for according to that doctrine, the same person might stand in the relation of tenant and trespasser to his landlord at the same time.”
In Blyth v. Dennett, 16 Law & Equ. R. 424, which was also a case of notice to quit, it was conceded that the acceptance of rent, accruing after the expiration of the notice, would have been a waiver of it; but no such rent had been received.
That Lord Mansfield did not intend, in Doe v. Batten, to question the principle that acceptance of rent accruing after forfeiture, with notice of the forfeiture, is a waiver of it, is conclusively shown by the case of Goodright v. Davids, Cowp. R. 803, decided only three years after the former. That was ejectment brought by lessor against lessee on the ground of forfeiture by subletting, contrary to a covenant and condition contained in the lease. The defense was that the forfeiture had been waived by the acceptance of rent. *284 Lord Mansfield said, “ This case is extremely clear. To construe this acceptance of rent due since the condition broken, a waiver of the forfeiture, is to construe it according to the intention of the parties. Upon the breach of the condition the landlord had a right to enter. He had full notice of the breach, and does not take advantage of it; but accepts rent subsequently accrued. That shows he meant the lease should continue. Cases of forfeiture are not favored in law; and where the forfeiture is once waived, the court will not assist it. The consequence is, that there must be judgment for the plaintiff.” The authority of this case has never been denied. It is cited by the elementary writers, and set forth at length in 2 Lorn. Dig. marg. 91-2.
The case of Jones’ devisees v. Roberts, 3 Hen. & Munf. 436, in which it was contended by the counsel for the plaintiff in error, that this court had approved the case of Doe v. Batten, was a suit for specific performance of an agreement for a lease, and there were many reasons for refusing to enforce the agreement, without relying on the doctrine of that case, which is incidentally referred to with seeming approbation by two of the judges. The question did not properly arise, and could not have been considered in the case.
ITothing done by the lessor before he has knowledge of the forfeiture can have the effect of waiving it. After he is informed of the forfeiture he must make his election, in view' of all the circumstances, whether he will waive or enforce it. He is not bound to elect immediately; but may take his own time to’ do so. Until he makes up his mind, however, he must take care to do no act which may have the effect of affirming or recognizing the continuance of the tenancy. He cannot first waive, and then enforce the forfeiture. The lessee cannot be a tenant and a trespasser at the *285 same time. He continues to be a tenant, if the forfeiture be waived, just as if it had never occurred. He becomes a trespasser, if it be enforced.
The waiver of one forfeiture is of course not a waiver of a.subsequent forfeiture: And if the act of forfeiture be continuing, a waiver of a right of reentry for one breach will not preclude a re-entry for a new or continuing breach. Thus, a lessor may take advantage of a forfeiture occuring de die in diem, as in the case of a neglect to repair, work a mine, or the like, continuing from day to day, notwithstanding „a previous distress for rent. 2 Platt on Leases 471, and cases cited. So also, where the covenant was that rooms should not be used for certain purposes, it was held that there was a breach of this covenant every day during the term that they were so used ; and that the lessor was not precluded by receiving rent subsequent to the commencement of such user, from taking advantage of the forfeiture, provided the user continued after such receipt of rent. Comyn 334; Doe v. Woodbridge, 9 Barn. & Cress. 376, 17 Eng. C. L. R. 399.
But a sublease is no more a continuing act of forfeiture than an assignment, notwithstanding what is said by Platt, Id. 472, that “ It does not appear to be settled whether an underletting is or is not a continuing breach.” The only authority cited for this observation is an obiter dictum of the V. C. in Dowell v. Dew, 1 Young & Col. 345, 366, 20 Eng. Ch. R. 345. But that dictum is plainly opposed to principle and the whole current of authority. The cases are numerous in which forfeitures by subletting have been held to be waived by the subsequent acceptance of rent. The case already cited from Cowper 803, is a case of that kind. There could have been no difficulty in enforcing the forfeitures in these cases if the breaches had been continuing. The only difference between an assignment and underlease in this respect is, that the *286 doctrine of Dumpor’s Case, 4 Coke R. 119, in regard to assignments, has not been extended to underleases. It was held in that case that a license to assign any part is a dispensation of the whole condition, and the lessee or his assigns may assign all the residue without license. Whereas it has been since held that a lessor who has a right of re-entry on a breach of covenant not to under-let, does not, by waiving his entry on one underletting waive his right to re-enter on a subsequent underletting. Doe v. Bliss, 4 Taunt. R. 735; Archbold 97. Ip the former case the waiver is of the condition itself. In the latter only of the forfeiture for a particular breach. But in the latter each breach is a complete, and not a continuing act of forfeiture.
Having stated the legal principles which I deemed pertinent, it now only remains to apply them to the case. It is certain that Johnston never assented to the underletting to John Darraeott, or affirmed or recognized his tenancy; but that he always refused to do so. It is, I think, equally certain that he did affirm and recognize the continuance of the tenancy of E. F. Darraeott, with full knowledge of the forfeiture. He was fully informed on the 2d of May 1855 that the premises would be sublet to John Darraeott on the 15th of that month; and again, on the 15th, was informed that they had accordingly been sublet. On the 2d of July he demanded the rent of E. F. Darracott, a quarter’s rent having, on the preceding day, become due under the lease. On the 3d of that month he received two hundred dollars, and signed a receipt for it, in part of rent to the first of the month. On the 5th or 6th of the month he sued out a distress warrant against E. F. Darraeott for five hundred and fifty dollars, balance of the quarter’s rent due on the first of the month, having first made the necessary affidavit that the said balance was justly due him, “ for rent reserved upon contract from the said E. F. *287 Darracott.” On the same or the next day he received J. Darraeott’s check for the said balance, and gave a receipt therefor, 11 protesting at the same time that Darracott was not lessee or tenant, but that R. F. Darracott was.” Each and all of these acts, to wit, the demand of the rent, the distress for it, the acceptance of it, and the express declaration made at the time of its payment, were plain and palpable affirmations and recognitions of the existing tenancy of R. F. Darracott. Why, then, are they not a waiver of the forfeiture? Can it be because Johnston refused to sanction the underletting, or to recognize J. Darracott as his tenant? Certainly not. It was not necessary to do that in order to continue the existence of the lease. There was no inconsistency in repudiating the act of subletting, and at the same time insisting on the continuance of the lease. R. F. Darracott could not drive Johnston to the alternatives of sanctioning the act of forfeiture or putting an end to the lease. The right of re-entry was a cumulative remedy, to which Johnston might resort or not, at his election; and whether he resorted to it or not, he might still resort to his remedy by action for the breach of the • covenant not to underlet j in which action he would j be entitled to recover such damages as he could show that he had sustained. See Doe v. Meux, 10 Eng. C. L. R. 417. It might have been to his interest to continue the lease notwithstanding the breach, and to rely for his indemnity on the action only. The covenant would be of no use if he could not do so. By enforcing the forfeiture he would have lost the benefit of the year’s rent which had been secured to him in advance, (except so much as had accrued before the forfeiture,) and taken the chance of finding another tenant for the property.
I conclude, then, that these acts were a waiver of the forfeiture: and the waiver, having once been *288 made, could not be withdrawn. Johnston could not affirm the continuance of the tenancy to the 1st of July and then determine it. He may have supposed that he had a right to do so; but that cannot change the legal effect of his acts. If the tenancy of E. F. Darracott is still a subsisting tenancy, it follows that Johnston is not entitled to the possession of the premises, and of course cannot recover it of J. Darracott, however wrongful the act whereby the latter acquired it.
I am for affirming the judgment of the Circuit court.
The other judges concurred in the opinion of Moncure, J.
Judgment affirmed.