WILLIAM ORR, Respondent, *vs.* CORNELIUS ZIMMERMAN, *et als.* Appellants.

1. *Forfeitures, how regarded in equity.*—Although courts of equity will not interfere to prevent forfeitures which are for the protection of the vendor, and where a strictly legal right is fairly claimed with full notice to the vendee, yet where the right has been repeatedly waived, and valuable improvements have been made, and the vendee has been led by the waivers to assume that he will at all events be apprised of any change of policy on the part of the vendor, the sudden exaction of a forfeiture will not be favored by the chancellor; especially when the object of the vendor is not self protection, but simply a discrimination between two sets of purchasers, the interest of the vendor being equally safe with either.

*Appeal from  Clinton Circuit Court.*

*S. H. Corn, with  T. E. Turney,* for Appellants.

*James Carr, with  H. B. Leach,* for Han. & St. Jo. R. R. Co.

I. By the terms of the contract with Ann M. Webb, the Han. & St. Jo. R. R. Co. reserved the right to terminate it, to re-enter and re-sell for non-payment of the purchase money, or for a failure to pay the taxes assessed upon the land.    In both particulars respondent was in default for the years 1869 to 1873, inclusive, a period of five years.    The exercise of this right reserved is a proceeding in affirmance of the contract, and not in rescission of it—it is enforcing a remedy expressly reserved by the contract itself, and the vendor does not have to put the vendee in *statu quo*.   (Hansbrough vs. Peck, 5 Wall. 497 ; Green vs. Green, 9 Cow. 46 ; Ketchum vs. Everston, 13 Johns. 359 ; Dowdle vs. Camp, 12 Johns. 457 ; Ellis vs. Hoskins, 14 Johns. 363 ; Haynes vs. Hart, 42 Barb. 20 ; Rounds vs. Baxter, 4 Greene, 454 ; Morton vs. Chandler, 6 Greene, 142 ; Seymour vs. Barrett, 14 Mass. 266 ; Cartwright vs. Morgan, 6 Gray, 412 ; Page vs. Cole, 6 Clarke, 153 ; Walters vs. Miller, 10 Ia. 427 ; Donaldson vs. Waters, 30 Ala. 175 ; Wheeler vs. Mather, 56 Ill. 241 ; Illingworth & Clark vs. Miltenberger, 11 Mo. 80.)

II. When, in an executory contract of sale like the one under consideration, the right is given to the vendee to enter into pos-

session, and the right to terminate the contract and re-enter for default in payment of the purchase money is reserved to the vendor, the vendor may, on default, re-enter and terminate the contract without notice or demand of possession, or demand of amount due, or tender of a deed ; or he may sell the land to another party. (Doolittle vs. Eddy, 7 Barb. 74 ; Stone vs. Sprague, 2 Barb. 509 ; Hotalling vs. Hotalling, 47 Barb. 163 ; Moore vs. The Mayor, etc., of City of Jefferson, 45 Mo. 202.)

*J. E. Merryman and T. J. Porter, with Lucas & Harwood*, for Respondent, cited: O'Fallon vs. Kennerly, 45 Mo. 124, and cases cited ; 21 N. J. Eq., 494 ; 13 Ohio St. 306 ; 49 Mo., 107.)

NAPTON, Judge, delivered the opinion of the court.

To understand the object of this proceeding, it will be most convenient to state the facts upon which it is based, especially as they mainly appear from written documents, contracts, receipts, deeds, etc.

The petition was filed in 1873. On the 1st of February, 1866, the Han. & St. Jo. R. R. Co. sold to one Ann M. Webb eighty acres of land for $1,360, or $17 per acre, payable in ten annual instalments, of $136 each, with interest at six per cent., payable annually in advance, the first payment to be made February 1, 1867, and others at the corresponding date of succeeding years, the last payment being due Feb. 1, 1876. The contract contained a receipt for $81.60, interest in advance for the first year ; it contained stipulations for inclosing and improving certain proportions of the land annually, and prohibitions against removing timber except for fences or building, and covenant for the punctual payment of interest and principal, and also for paying the taxes. The contract also contained the following stipulation : "And it is agreed and covenanted by the parties hereto, that time and punctuality are material and essential ingredients in this contract. And in case the second party shall fail to make the payments aforesaid, and each of them punctually, and upon the strict terms and times above limited, and likewise to perform

and complete all and each of her agreements and stipulations aforesaid strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become utterly null and void, and all rights and interests hereby created or then existing in favor of the second party, or derived from her, shall utterly cease and determine, and the right of possession, with all equitable and legal interest in the premises hereby contracted, shall revert to and re-vest in said party, without any declaration of forfeiture or act of re-entry or any other act of the said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or services performed, as absolutely, fully and perfectly, as if this contract had never been made. And said party of the first part shall have the right, immediately upon the failure of the party of the second part to comply with the stipulations in this contract, to enter upon the land aforesaid and take immediate possession thereof, together with the improvements and appurtenances thereto belonging. And the said party of the second part doth covenant and agree that she will surrender unto the said party of the first part the said land and appurtenances without delay or hindrance, and no court shall relieve the party of the second part from a failure to comply wholly and literally with this contract."

This contract was signed by both parties, and no notes were given, the contract being executed in duplicate. On this contract were indorsed receipts for money, to-wit: March 23, 1869, $40.80 ; Oct. 16, 1869, $42.40 ; June 6, 1868, $228.32, amount of third payment ; June 6, 1868, $9.08 ; May 7, 1869, paid by Wilmarth, $200. This contract was assigned by Anna Webb to J. T. Zimmerman, on October 18th, 1867 ; on the 21st of September, 1868, J. T. Zimmerman assigned the same to D. G. Wilmarth, and executed a quit-claim deed to Wilmarth for the tract of eighty acres, and another tract of eight acres lying north of the railroad and adjoining the first tract. On the 15th of July, 1871, said Wilmarth assigned the contract to plaintiff, Orr, and executed a quit-claim deed to Orr for both tracts, for the consideration expressed of $5,000.

At the date of this assignment and deed to Wilmarth, Joseph T. Zimmerman owed Wilmarth $1,618 for money lent, and also for two notes of Zimmerman & Son, one to Harwood for $200,. dated in 1869, and payable in eighteen months, and the other to House & Brown, $272, dated July 24, 1869, and payable five months after date. The land in question was, at the date of Wilmarth's purchase, unimproved and worth from twenty to thirty dollars an acre ; at the date of this suit it was estimated by witnesses at from sixty to seventy-five dollars per acre. At the request of J. T. Zimmerman, Wilmarth gave his son, Cornelius (one of the defendants) a bond to convey this property to him (Cornelius) on the payment of this $1,600, and the two notes above referred to, and interest. In 1870 Sylvester Zimmerman, who lived in Kansas, and was a brother of J. T. Zimmerman (then dead), came to Cameron, and was informed of the exact condition of this land, the railroad contract, the assignments and the title bond to Cornelius, his nephew. Cornelius and his brother, since the death of their father, J. T. Zimmerman, have been living on the land, and built several houses on it, and otherwise improved it.

In March, 1873, the agent of the R. R. Co. for the sale of their lands, who was the father-in-law of Cornelius Zimmerman, by direction of the land commissioners and general land agent, sold this land (the eighty acres) to Sylvester Zimmerman, at twenty dollars per acre, on one and two years' time, and a cash payment of $534, and the payment of back taxes, amounting to $250. Sylvester Zimmerman had been apprised that the land was for sale, by a communication from John Zimmerman, a younger brother of Cornelius. The contract between the R. R. Co. and Sylvester Zimmerman is substantially like the one with Webb, except as to amounts, etc. One-half interest in this contract was assigned to Christopher Zimmerman, of Indianapolis.

These facts are recited in the petition, and it is charged, that after the land had been greatly enhanced in value by improvements, etc., in excess of the debt secured by it, the defendants, Cornelius and Sylvester, for the purpose of preventing the subjec-

tion of the land to the payment of said debts of J. T. Zimmerman, fraudulently procured a forfeiture of said land to the Han. & St. Jo. R. R. Co., and for the purpose of securing said land free from the charge of said debts, fraudulently procured the execution of a new contract by the defendant, the R. R. Co., to the defendant, Sylvester. It is charged that said last mentioned contract was not executed upon any new or further consideration, but for the amount due on the first mentioned contract with Ann Webb ; that said Sylvester accepted said contract with full knowledge of all the facts, and that he paid no part of the consideration.

The prayer is for the sale of the land and the application of the proceeds to the payment of the moneys due from J. T. Zimmerman to plaintiff, and for general relief.

The answer of Sylvester Zimmerman denied the charge of fraud and collusion with the railroad company. The R. R. Co. and the administrator, Woodruff, did not answer, and a default was taken.

In the decree of the court it was found that there was due the plaintiff, on the demands set forth in his petition, as assignee of Wilmarth, $2,628.26 ; that $568.36 bore ten per cent. interest, and $2,060.35 bore six per cent. ; that J. T. Zimmerman conveyed, by assignment of the Han. & St. Jo. R. R. Co.'s contract with Webb, and also by quit-claim deed to Wilmarth ; that upon this assignment and conveyance, Wilmarth, at the request of said Joseph, executed to Cornelius Zimmerman a title bond, etc. (as hereinbefore stated) ; that said Cornelius accepted said bond with its conditions ; and the court further finds that the contract of the Han. & St. Jo. R. R. Co. with Sylvester T. Zimmerman, one-half of which was assigned to Christopher Zimmerman, was made in fraud of and to the prejudice of the rights of the plaintiff, and that the equity of the plaintiff under the first contract made by the Han. & St. Jo. R. R. Co. with Ann M. Webb and her assignees, is superior to that of defendants, Sylvester and Christopher Zimmerman.

It is therefore decreed that said last mentioned contract be set aside and held for naught, so far as the rights of plaintiff are concerned or affected. But the court further finds that said Sylvester and Christopher Zimmerman have paid to the Han. & St. Jo. R. R. Co., as part of the purchase money of said land, the sum of $1,173.60, and that the said Sylvester paid the sum of $273 in taxes which, however, the court finds was balanced by the rents and profits during the term he had possession.

It is further decreed that all the right and title of Cornelius Zimmerman to the eight acres be sold to satisfy the debt of plaintiff, and that all the title of Sylvester Zimmerman, Cornelius Zimmerman and Christopher Zimmerman to the eighty acre tract be sold, or so much as may be necessary to pay plaintiff after the sale of the first mentioned tract of eight acres, and to pay the sum of $1,250.84, the amount paid by Sylvester Zimmerman and Christopher Zimmerman to the Han. & St. Jo. R. R. Co., as above stated, with six per cent. interest. It is further ordered, that this last debt be first paid, and then the unpaid balances to plaintiff; that such sale of the eighty acres be made subject to any unpaid balance due or to become due the Han. & St. Jo. R. R. Co.

It would seem difficult, upon an examination of the facts disclosed by this record and the decree of the circuit court, to conjecture upon what grounds the decree could be expected to be reversed. The railroad company, though nominally a party defendant, and properly so, has really no interest in this controversy, and so far as the eight acre tract of land is concerned, it is not pretended that the decree was in any respect improper.

The principal point discussed in the briefs of the counsel is, the right of the railroad company to exact a forfeiture of the Webb contract, and re-sell the land to a portion of the defendants. Although courts of equity, notwithstanding their abhorrence of forfeitures, will not interfere where the exaction is made for the protection of the vendor, and under circumstances where a strictly legal right is fairly claimed, with full notice to the vendee (Hansborough vs. Peck, 5 Wall., 497), yet, where the right

has been repeatedly waived, and valuable improvements have been made, and the vendee is thus led, by frequent waivers, to assume that he will, at all events, be apprised of any change of policy on the part of the seller, the sudden exaction of a forfeiture, behind the back, as it were, of the vendee, would not be very favorably viewed by a court of equity, especially if the object was not self-protection, but simply a discrimination between two sets of purchasers, the interest of the vendor being equally safe with either.

The second sale in 1873, by the agent of the railroad company to the uncle of his son-in-law, without any notice to the representatives of the first purchaser, at a price exactly equal to what was then due on the original contract, has an awkward appearance in a court of equity.

However the facts may have been, the decree below fully protects the company from any possibility of loss, if indeed, they needed any protection, having the title in their own hands, and accordingly we find the railroad company not complaining. And the defendants, the second purchasers, are given a priority over the plaintiff's claim in securing their advances out of the proceeds of the land. The decree seems to be just, and we are unable to perceive in it any violation of any principle of law or equity. It is therefore affirmed. The other judges concur, except Judge Vories, absent.