# CHARLESTON.

HUKILL *v.* MYERS *et al.*

Submitted June 13, 1891.—Decided April 23, 1892.

1. LEASE—BREACH—WAIVER—FORFEITURE.

Where in an oil lease there is a clause of forfeiture for nonpayment of rental, but the lessor consents that it need not be paid at the times when due and indulges the lessee and acquiesces in his failure to pay, there is no forfeiture for nonpayment.

2. LEASE—BREACH—WAIVER—FORFEITURE.

In case of such a lease, if the lessor by his conduct clearly indicates, that payment will not be demanded when due, and thus lulls the lessee into a feeling of security and throws him off his guard, and because of this he does not make payments when due, the landlord can not suddenly without demand or notice declare a forfeiture, and there is no forfeiture which equity would recognize, and, if there is in such case technically a forfeiture at law, equity would relieve against it.

3. LEASE—BREACH—WAIVER—FORFEITURE.

If, after such rental has accrued and is not paid, whereby a forfeiture exists, the lessor with knowledge thereof receives the rentals accruing after forfeiture, he waives and can not enforce the forfeiture.

*O. Johnson* for appellant cited 3 W. Va. 143; Id. 536; 7 W. Va. 454; Id. 678; 10 W. Va. 59; 11 W. Va. 175; Id. 311; Id. 427; Id. 511; 15 W. Va. 90; Id. 444; Id. 666; 16 W. Va. 724; Id. 791; 19 W. Va. 179; 21 W. Va. 1; Id. 83; Id. 124; 22 W. Va. 160; Id. 404; Id. 1; 24 W. Va. 32; 28 W. Va. 336; 30 W. Va. 198; 3 Atk. 3; Id. 141; 4 Mad. 408; 2 Paige 396; 4 Paige 537; 1 Bland 252; 5 Por. 10; 1 Johns. Ch'y 111; 10 Gill & John. 66; 5 B. Mon. 96; Id. 593; High Inj. §§ 615, 698, 701, 715, 718, 722; 5 L. R. A. 731; 8 W. Va. 95; 1 Wall. 61; 60 Pa. St. 452; 13 W. Va.

20, 21; Id. 24; Id. 12; 102 U. S. 108; 2 Sto. Eq. Jur. §§ 1316, 1321; Pom. Eq. Jur. § 453; Tay. Landl. & Ten. § 495; 80 Pa. St. 142; 96 Pa. St. 310; 1 How. 211; 15 Wall. 477; 40 Cal. 384; Boyd v. Talbot 12 Ohio; 20 Conn. 331; 40 Mo. 449; 118 Mass. 118; Miller v. Sparks 4 Col.; People v. Dudley, 58 N. Y.; 3 Ind. 132; 21 Ind. 454; Bacon v. Furniture Co., 53 Ind.; 11 Cal. 432; 100 Mass. 353; 49 Ill. 211; 98 Pa. St. 555; 13 Ohio St. 471; 44 Ill. 326; 8 Humph. 614; 6 Ired. 65; 81 Va. 118; 3 McCr. 463; 4 H. & McH. 153; 64 Mich. 172; 3 Cal. 334; 41 Col. 432; 4 Col. 304; 49 Ill. 211; 17 Johns. 66; 20 N. H. 36; 4 N. H. 251; 8 N. H. 477; 34 N. H. 400; 12 B. Mon. 462; 3 C. & P. 613; 2 B. & C. 490; 1 Sm. Lead. Cas. 109; 5 Serg. & R. 375; Co. Litt. 216 b., 218; 37 Pa. 525; 21 Hun. 26; 86 N. Y. 638; 27 W. Va. 785; Gas Co. v. DeWitt, 130 Pa. St.; 3 Cal. 334; 4 Kent Com. 128; 1 Lom. Dig. 338; 1 Min. Inst· 229; 2 Min. 229; 2 Bl. Com. 155; 2 Tho. Litt. 3, 4, 87, 88, 95, 97; Ad. Eject. 197; 9 Paige 431; 6 N. Y. 74; Code (1891) c. 71, s. 1; 7 W. & S. 41; 38 Pa. St. 346, 353; 6 Duer 262; 1 M. & W. 402; 2 Russ. 170; 16 C. B. (N. S.) 421; 40 Mo. 449, 460; 118 Mass. 446, 447; 123 Pa. St. 491; Wills v. Gas Co., 130 Pa.; Galey v. Kellerman, 123 Pa. St.; Parmellee v. R'd Co., 2 Seld.; 37 Pa. St. 529; 20 Vroom 521; 22 Vroom 34; 7 T. R. 117; Tay. Landl. & Ten. § 297; 5 Co. 39; 5 Cush. 214; 11 Johns. 1; 9 Wend. 147; 3 Wend. 230; 1 Sm. Lead. Cas. 119; 37 Pa. St. 535; 3 Co. 64; 2 N. H. 163; 2 Seld. 74; 15 M. & W. 718; 39 N. H. 491; 12 Ired. 194; 6 Gill 343; 28 Minn. 437; 8 Fost. 324; 1 Den. 516; 5 Cush. 273; 53 Ind. 230; 63 Ind. 415; 40 Cal. 384; 41 Cal. 432; 1 Conn. 79; 15 Gratt. 329; 27 W. Va. 663, 672; 1 Wash. Real Prop. 451; 8 Pick. 284; 3 Ind. 343; 45 Me. 359; 1 Sm. Lead. Cas. 114; 38 N. Y. 165; 16 Gray 309; 102 Mass. 328; 46 Barb. 122; 21 Wall. 44; 2 Kern. 131; 20 Ga. 563; 13 Cal. 107; 2 Seld. 506; 16 Pa. St. 140; 2 Dutch. 21; Id. 386; 31 Conn. 468; 24 W. Va. 682.

*W. P. Hubbard* for appellant cited 6 W. Va. 206; 130 Pa. St. 235, 254; 129 Pa. St. 94, 99, 102, 109; 63 Mo. 72; 26 N. J. Eq. 82; 2 Carr. & P. 246; 107 N. Y. 610, 618–620; 3 Leigh 160, 187; 1 Pom. Eq. Jur. § 455; 2 Lead. Cas. Eq.

(4th Ed.) 1128 ; Id. 2025 ; 2044 ; Id. 2028 ; Tay. Landl. & Ten. § 495, 496 ; 2 Sto. Eq. Juris. §§ 1314, 1315 ; 1 Hare 109 ; 1 Sm. Lead. Cas. (6th Am. Ed.) 102 ; 7 Wall. 416, 421 ; 62 N. Y. 493 ; 12 Metc. 112 ; 4 Munf. 332 ; 68 Am. Dec. 85.

*Keck, Son & Fust* for appellant cited High Inj. § 615 ; Sto. Eq. Juris. §§ 716–718, 722, 724, 736, 741, 746, 751, 775, 779–784 ; 4 Kent Comm. 126, 127 ; 6 W. Va. 206 ; Gas Co. *v.* DeWitt, Wills *v.* Gas. Co. Pittsb. L. Jour. for Nov. 4, 1884 and December 11, 1889 ; 1 Sm. Lead. Cas. (H. & W.) 93–98 ; Lom. Dig. 91, 92 ; 2 Sto. Eq. Jur. 1301, 1314–1316, 1321, 1322.

*A. F. Haymond, A. C. Snyder, Alfred Caldwell, Berkshire & Sturgiss* and *Cox & Baker* for appellees.

*A. F. Haymond* and *Cox & Baker* cited 18 W. Va. 693 ; 11 Leigh 393, 398, 401 ; 19 W. Va. 288, 289 ; 28 Gratt. 60 ; 1 H. & M. 372 ; 11 W. Va. 146 ; Id. 449 ; Id. 562 ; Id. 584 ; 15 W. Va. 299 ; 3 Leigh 614 ; 9 Gratt. 294 ; 2 Dan. Ch'y Pr. 1073 ; 28 Gratt. 49 ; 10 Gratt. 398 ; 6 Ves. 147 ; 7 Ves. 305 ; 18 Ves. 184 ; 3 Dan. Ch'y Pr. 1852, 1853 ; 1 Johns. Ch'y 318 ; 7 Johns. Ch'y 315 ; 15 Vt. 84 ; 1 High Inj. (20 Ed.) § 730 ; 139 Pa. St. 235 ; White & Tud. 1060 ; 3 Edw. Ch'y 78 ; 7 Paige 82 ; 1 Johns. Ch'y 370 ; 1 Bus. Eq. 256 ; 36 Ill. 18 ; 21 Ill. 643 ; 13 Ill. 573 ; 5 Gilm. 309 ; 2 Stockt. Ch'y 577 ; 2 Ohio (N. S.) 326, 332 ; 10 All. 239 ; 3 Leigh 161, 187 ; 7 Ohio 424 ; 9 Ohio 189 ; 1 Ia. 302 ; 45 Mo. 124 ; 34 Ill. 142 ; 11 P. F. Sm. 460 ; 83 N. Y. 85 ; 86 N. Y. 638 ; 47 Me. 500 ; Lead. Cas. Am. Law Real Prop. 150 ; 31 W. Va. 566 ; 27 W. Va. 639 ; 47 Miss. 189 ; 28 W. Va. 715 ; 31 W. Va. 141.

*A. C. Snyder* cited 80 Pa. St. 948 ; 96 Pa. St. 310 ; 123 Pa. St. 491 ; 130 Pa. St. 222 ; Id. 235 ; 21 Hun. 26 ; 86 N. Y. 638 ; 24 W. Va. 49.

BRANNON, JUDGE :

By deed of 30th October, 1885, David Myers leased to E. M. Hukill and George P. Hukill for a term of twenty years a tract of three hundred acres of land in Monongalia county for the purpose of producing oil, said deed containing a

covenant on the part of the lessees "to commence operations for said purposes within one year from and after the execution of this lease, or to thereafter pay to said party of the first part twelve dollars per month until the work is commenced ; and a failure of the party of the second part to comply with either one or the other of the foregoing conditions shall work an absolute forfeiture of this lease."

Hukill did not commence operations within the year. He paid one month's rental, as required by the lease, and paid other money for rentals, as below more fully stated, but not within the time required by the lease, which money was accepted by Myers; and on 27th July, 1889, on the theory that by reason of nonpayment the lease to Hukill was forfeited under its provisions, Myers made a second lease of the same land to J. C. Smith and H. S. Akins for ten years, and they took possession of the land under it; and when on 29th July, 1889, E. M. Hukill, who had become sole owner of the lease by assignment by George P. Hukill of his interest therein, attempted to haul material on to the premises to begin operations, they were driven off and prevented from taking possession by Smith and Akins claiming under their lease. Thereupon E. M. Hukill brought a chancery suit in the Circuit Court of Monongalia county against Smith, Akins and Myers, to enjoin Smith and Akins from operating for oil on said premises, to compel specific performance by Myers of his lease to Hukill, and to obtain possession of the premises by the award of a writ of possession; and, his bill having been dismissed, he appeals to this court. On motion of defendants, an injunction was awarded pending the cause, to restrain Hukill from operating on the premises. Hukill tendered all rental accruing subsequently to his last payment, but Myers refused it, he having then made the second lease.

I do not understand the bill in this case to be one which, conceding that there has been a forfeiture of the Hukill lease, prays specific relief from forfeiture, under that principle of equity jurisprudence based on its liberality, charity and mercy, by which it relieves against the hard sentences of the common-law, based on the letter of the bond imposing forfeiture; but it is a bill which denies the exist-

ence of any forfeiture of the Hukill lease, and asks relief based on the right of Hukill under its very letter.

Therefore the first question is this: Had the Hukill lease become forfeit and dead by its own terms when the lease to Smith and Akins was made? I answer that it had not. And why not? Hukill paid Myers twelve dollars the first month's rental, on 16th November, 1886, before it was due, and on that day Myers signed a receipt therefor and it contains the clause, "I hereby agree to accept my rental hereafter quarterly." The rental was not paid up quarterly, it is true; but Myers demanded no rental, did no act declaring his dissatisfaction and intent to insist on a forfeiture, but as an act unmistakably evincing no dissatisfaction, and repelling all idea that he intended to insist upon a forfeiture, and affirmatively showing that he intended not to insist upon it, but to waive it, he drew an order on Hukill on 25th December, 1888, to pay Barrickman "all rents that may be due me at this time on oil lease, and this shall be your receipt for the same;" and Hukill promptly responded to this order by paying two hundred and eight eight dollars; and on 26th December, 1888, Myers executed a receipt to Hukill acknowledging the payment of the two hundred and eighty eight dollars, stating it to be "in full for rental on oil lease to December 30, 1888;" and afterwards, on 18th May, 1889, Hukill paid Myers sixty dollars, and Myers gave him a receipt, stating that it was "in full for rental on oil lease to May 30, 1889."

After Myers had thus by his conduct clearly manifested a dispensation or waiver of the strict letter of the lease, without any demand on Hukill for the pittance of twelve dollars due under the letter of the lease on 30th June, 1889, if we ignore the said agreement to accept rent quarterly, without any notice to Hukill of dissatisfaction, or of an intent to insist on the letter of the lease, and if we recognize said agreement more than a month before the rent for the quarter, whether we count from the close of a year from the date of the lease or from 30th November or 30th May, the dates specified in the receipts for the first payment of twelve dollars, and the last payment of sixty dollars, as dates to which such payments satisfied the rental,

Myers took the inequitable step of making the second lease. At that date no forfeiture existed, and Myers had no title to confer by this second lease.

But Myers denies the clause in the receipt of 16th November, 1889, agreeing to accept rental quarterly, saying that it has been since interpolated into it, or, if there when he made his mark to it, it was not read to him. Upon this point the evidence is conflicting, and it would answer no purpose as precedent to detail it; but there are circumstances which turn the scale of probability in favor of the claim that the clause is genuine.

The very fact that Hukill did not make, and Myers did not ask, payment at the close of each month, or even quarterly, is a strong circumstance to show that there had been some kind of absolution or departure from the rigid provision of the lease, especially as we reflect that then there was no controversy, and the action of the parties probably truly spoke their agreement or understanding, giving corroboration to the evidence on Hukill's side that Myers said he was not particular about the rent, and it could be paid when he needed it. The fact that he sent word that he needed money and drew a draft on Hukill for two years' rental is strong corroboration of this theory; and, in addition, the clause by which the lessor agreed to accept rental quarterly was inserted in numerous other leases taken by Hukill in the same section of country, rendering it highly probable that this was not an exception; and it seems to me that this is admissible evidence, there being no *lis mota* when the clause was inserted in such leases.

And again, the receipt, as it appears, is *prima facie* evidence of its genuineness, and he who would prove it a forgery must carry the burden of at least proving it a forgery by clear evidence, not by simply a conflict of evidence. It can not be said, if the clause in question is a forgery, that Hukill knew the fact, as the receipt was taken by an agent; though, while that fact would have great weight on a bill to be relieved from a forfeiture, I concede that it does not have such weight on the question whether there was a forfeiture. If that receipt is, as to said clause, genuine, then it is clear that when the second lease was made there was no forfeit-

ure of the first lease; because, though there was not quarterly payment, yet Myers, before the second lease, waived his right to declare a forfeiture on that score for the past, by receiving the rentals; and all authorities now agree that, if there was cause of forfeiture, the lessor for whose benefit the forfeiture clause existed might waive it; and, after the last payment, no money was due from Hukill at the date of the second lease.

But discard that clause from the case; say that the receipt as to it is not genuine; yet its elimination can not alter the result. Why not? Because the action of Myers in waiting two years for rental without demand, or any act indicating an intent to insist upon the payment of rentals at the very day of maturity, or to insist upon the forfeiture clause of the lease, his asking for and receiving the sums of two hundred and eighty eight dollars and sixty dollars as payment to 30th December, 1888, and 30th May, 1889, was a waiver of his right to insist upon forfeiture, and was a consent to a departure from the letter of the lease, lulling Hukill into a feeling of security, fairly inspiring a belief in him that Myers acquiesced in his action under the lease, which called on Myers to signify to Hukill his dissatisfaction and his insistence thereafter upon the rigid letter of his right, and prevented Myers from suddenly declaring a forfeiture of the lease.

We are now in a court of equity. Courts of equity were originally founded, among other purposes, to relieve against the hardness of courts of common law, and notably to relieve against forfeiture, even where it clearly exists; and very safely it can be said that equity looks with disfavor upon forfeitures, and will not be quick, active, or alert to see or declare or enforce them.

2 Story, Eq. Jur. § 1319. "Where the lessor's conduct has misled the lessee into supposing the covenant was not to be insisted on, equity will relieve." *Hughes* v. *Railroad Co.*, 1 C. P. Div. 120, note 1; 2 Tayl. Landl. & Ten. note 1, § 496.

"If there has been a breach of the agreement sufficient to cause forfeiture, and the party entitled thereto, either expressly, by his conduct, waives it or acquiesces in it, he will

be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary." 1 Pom. Eq. Jur. § 451. In a note to section 1, Pomeroy very correctly says : "In many such cases there would be no need of an appeal to equity, since the breach and forfeiture would be waived at law."

I do not think that even a court of law would recognize a forfeiture in this present case.

In *Helme* v. *Insurance Co.*, 61 Pa. St. 107, it was held that where an insurance company received premiums after they were due, and usually gave notice before premiums were due, but omitted it on this occasion, or if the company so dealt with the assured as to induce a belief that the clause of forfeiture would not be insisted on, and thus put the assured off his guard, the company could not take advantage of a default it incurred ; that the company may waive a defective compliance with its rules ; that forfeitures are odious, and are enforced only when there is the clearest evidence that that was what was meant by the parties.

In *Gas Co.* v. *De Witt*, 130 Pa. St. 235 (18 Atl. Rep. 724) where the parties disregarded times of payment of rentals on an oil lease, it was held no forfeiture accrued, and that forfeitures are to be construed strictly.

So, in *Duffield* v. *Hue*, 129 Pa. St. 94 (18 Atl. Rep. 566) it was held that "the right of a lessor to insist on a forfeiture of an oil lease, by reason of failure of lessee to put down a seventh well in a stipulated time, is waived by his acqiescence in the failure to put down two or three of the preceding six wells within the period stipulated ;" the court saying that the lessee might well believe, from acquiescence by the lessor, that strict performance of the terms of the lease would not be insisted on, and that a reasonable notice should have been given before a forfeiture could be claimed for failure to sink the seventh well.

In *Orr* v. *Zimmerman*, 63 Mo. 72, it was held : "Although courts of equity will not interfere to prevent forfeitures which are for the protection of the vendor, and where a strictly legal right is fairly claimed with full notice to the vendee, yet where the right has been repeatedly waived, and valuable improvements have been made, and the vendee

has been led by the waivers to assume that he will at all events be apprised of any change of policy on the part of the vendor, the sudden exaction of a forfeiture will not be favored by the chancellor, especially when the object of the vendor is not self-protection, but simply a discrimination between two sets of purchasers, the interest of the vendor being equally safe with either." In that case the contract contained the strongest terms to express that time was of the essence of the contract.

In *Thropp* v. *Field*, 26 N. J. Eq. 82, the rule was thus laid down: "Where the landlord, by his acquiescence in his tenant's dilatoriness in the payment of rent, has induced the tenant to believe that strict observance of his covenant to pay the rent at the time specified in the lease will not be required of him, equity will not permit the landlord to enforce a forfeiture, where, under the circumstances, it would be inequitable, and full compensation can be made to the landlord for the tenant's default." These principles apply to leases as well as other agreements, as Pomeroy says in note 1 to section 451.

If Myers thought or claimed that a forfeiture for nonpayment of rental had fallen, why did he willingly accept, long after it was due, rental accruing after the forfeiture accrued, if any did accrue? By receipt of rent after forfeiture, he waived right to insist upon it; and, moreover, led the lessee into a belief that in future payment at the exact time would not be insisted on, as it had not been before.

Taylor, in his work on Landlord and Tenant, (section 497) lays down the law to be that if, with knowledge that the condition has been been broken, the landlord "receives rent which has accrued subsequent to the breech of the condition, he again consents to and establishes the tenancy which it was competent for him to have avoided, and he thereby precludes himself from taking advantage of the tenant's misconduct."

In *McKildoe* v. *Darracott*, 13 Gratt. 278, it is held that a forfeiture of a lease for breach of condition by subletting is waived by accepting rent accruing after forfeiture, or suing out distress warrant with knowledge of the fact relied on as a forfeiture.

I do not overlook that when Hukill paid sixty dollars a month's rental was omitted, and he should have paid seventy two dollars. This was a mutual mistake, an accident, and a court of equity will not enforce a forfeiture for an inadvertent mistake, especially forfeit a valuable oil lease for twelve dollars, when it can be paid yet with interest, which is full compensation. It was mere miscalculation. Nobody claims it was willful or fraudulent. As soon as discovered, Hukill offered to correct the mistake. It was just as much Myers' duty to make a proper calculation as Hukill's.

It is said the proper amounts were not paid Myers, because no interest was paid. He did not demand interest, a circumstance tending to confirm Hukill's claim that Myers agreed to ask the money when he needed it. Myers knew what interest was, though an old and illiterate man. Why did he not ask it? He received the sums of two hundred and eighty eight dollars and sixty dollars, and receipted for them as full rental to the dates specified, and he can not now say these payment are unavailing for want of interest against his acceptance of the money and receipt. So I conclude that whether we say there never was a forfeiture, or, if technically there was, yet it was waived so as not to be within the power of Myers to urge it, there was no forfeiture existing, when the lease to Smith and Akins was made, for that lease to rest upon; and it follows that it was a violation, if not a fraudulent violation, of Hukill's right and title, to make that second lease.

Though, as stated in the outset in this opinion, this bill was not filed for relief as from an existing forfeiture, yet all the facts being stated in the bill, under the prayer of general relief, any feature or fact of the case which ought to be considered and given effect, if the bill had been one for relief against forfeiture, should be credited as justifying relief to Hukill, as the relief, in such aspect, would not be antagonistic, under the general prayer, to that specifically prayed for.

Before Hukill is put into possession he must pay rentals, and, as this can not be done here, we can not render a final decree, and must remand the cause to the Circuit Court in order that such decree may be entered.

It is therefore adjudged, ordered, and decreed that the two decrees complained of be reversed and annulled, and the cause remanded to the Circuit Court, with the direction that when Hukill shall pay to Myers, or into court for him, rental at twelve dollars per month, counting from 30th March, 1889, up to the close of the last month before such decree shall be made, less Hukill's costs in this and the Circuit Court, a decree shall be entered reinstating and perpetuating the injunction awarded to Hukill on the 5th day of August, 1889, and awarding a writ of possession to cause said Hukill to have against the defendants the possession of said tract of land for the purposes and upon the terms of said deed of lease, dated 30th of October, 1885, from said Myers to E. M. Hukill and George P. Hukill.

REVERSED. REMANDED.