The MINNEAPOLIS COMMUNITY DE-
VELOPMENT AGENCY, Appellant,

v.

Lillie Mae POWELL, Respondent.

No. C9–84–0085.

Court of Appeals of Minnesota.

Aug. 7, 1984.

E. Robert Pullman, Asst. City Atty., Min-
neapolis, for appellant.

Philip I. Nelson, Legal Aid Society, Min-
neapolis, for respondent.

Heard, considered, and decided by FO-
LEY, P.J., and RANDALL and SEDG-
WICK, JJ.

## OPINION

RANDALL, Judge.

The Minneapolis Community Develop-
ment Agency ("MCDA") filed an unlawful

detainer action against Powell, the tenant of a publicly subsidized house it managed. After both parties had filed memoranda, the trial court granted the tenant's pretrial motion to dismiss, and MCDA appealed. We reverse and remand for trial on the merits.

## FACTS

Powell and her children are tenants of a public housing unit owned and managed by MCDA. In November, 1977, Powell signed a lease providing that she would pay a stated percentage of her total income as rent. The lease also provided that she should report any change in family income to MCDA within five working days of the change. On April 16, 1979, Powell admitted that she had been employed since November of 1978 and that she had not reported the income to MCDA. Because this failure amounted to underpayment of rent, MCDA filed an unlawful detainer action.

Following a court's determination that Powell had violated her lease and that therefore MCDA was entitled to summary judgment of restitution of the premises, the parties entered into a rent repayment schedule which allowed her to repay $50 per month, and MCDA reinstated Powell's tenancy. The negotiations for a rent repayment schedule and the reinstatement of Powell's tenancy were not legally mandated, and were voluntary good faith actions by MCDA to enable respondent to continue enjoying the benefits of low cost housing even though she admitted to a lease violation.

Powell failed to meet the repayment schedule, and in August of 1982 it was renegotiated. After paying a total of $688 of the original $1219, leaving only $531 to be repaid, she again stopped paying on the arrearages. She did not contact MCDA to discuss the matter, nor did she ask for a moratorium on the arrearage portion of her monthly payment or some other mutually satisfactory solution. On January 20, 1983, MCDA notified Powell that it was terminating her tenancy on or before February 28, 1983, for her failure to comply with the terms of the repayment schedule. The notice also contained information on Powell's right to request an informal conference or a formal hearing. She did not make any such request.

For eight months following Powell's receipt of this termination notice, MCDA took no action. Powell paid her rent, which MCDA accepted, for each of those months. During each of those months, MCDA sent Powell a written demand for rent telling her how much rent MCDA expected her to pay. Powell paid the monthly rent but still continued to make no attempt to explain to MCDA her failure to make the previously agreed upon monthly arrearage payment.

On October 17, MCDA commenced this action. On November 1, Powell tendered November's rent, and MCDA accepted it.

## ISSUES

(1) Did MCDA waive its right to terminate the lease by accepting rent after the effective date of the termination notice?

(2) Do the lease and the repayment schedule allow termination of the tenancy for failure to comply with the terms of the repayment schedule?

(3) Is the non-waiver provision of the lease unconscionable and void as against public policy?

## ANALYSIS

■ 1. The lease Powell signed contained a non-waiver clause which reads:

Acceptance of rent with knowledge of good cause for termination of this lease shall not be considered a waiver of the Authority's right to terminate this lease on the basis of such good cause or the right to assert such good cause in any legal action.

If the tenant continues to occupy the dwelling unit after the termination of the lease, the tenant agrees to pay the Authority the reasonable value of the use of the premises for the period that the tenant continues to occupy the unit. The reasonable value for the use of the premises shall be equivalent to the amount of

rent for such period. However, such payments shall not constitute rent, and by accepting such payments, the Authority shall not waive its right to assert any lease violations in any legal action.

MCDA argues that its delay in instituting this unlawful detainer action did not waive its right to terminate the tenancy. Respondent, however, argues that the non-waiver clause applies *only* to waiver of a tenant's conduct, i.e., of a lease violation, rather than of the landlord's duty to give notice of termination. She argues that the non-waiver provision effectively states: "Just because we don't evict you the first or second time you violate your lease does not mean we cannot use those violations against you in any eventual action." The trial court agreed with respondent and ruled that MCDA had failed to give respondent proper notice of termination, since MCDA had waived its prior *notice* of termination by its subsequent conduct. Thus, the court ruled the non-waiver provision of the lease inapplicable. If the non-waiver provision is inapplicable, then, under the authority of *Arcade Investment Co. v. Gieriet*, 99 Minn. 277, 109 N.W. 250 (1906), conduct of the landlord after notice of termination of tenancy has been given may operate to waive the notice if conduct sufficiently manifests such an intention. Thus, the court ruled MCDA was estopped from summarily evicting respondent even if MCDA can show good cause.

▮ We find that the non-waiver provision is applicable in this case. The second paragraph of the non-waiver clause refers to this situation: "The tenant continues to occupy the dwelling unit after the termination of the lease." Further, even if the non-waiver provision were inapplicable and Powell could take advantage of it, the landlord's conduct after the notice of termination of tenancy has been given must manifest some intent to waive the notice. The MCDA manifested no such intent here. The acceptance of rent alone does not necessarily manifest any intent to waive the notice of termination. *See Arcade Investment*, 99 Minn. at 279, 109 N.W. at 252 (whether landlord's conduct manifests intent to waive notice is a question for the jury); *Vintaloro v. Pappas*, 310 Ill. 115, 141 N.E. 377 (1923) (acceptance of rent after institution of eviction proceedings not a waiver of forfeiture). Nor does the continued sending of "rent due" notices manifest such intent, since it is clear that such notices are sent to tenants of public housing only as reminders of the amount payable, and not as bills or invoices.

It would be inequitable and, in the long run, unfair to other tenants in Powell's position, to hold that once a tenant has breached a lease provision and the landlord has served a termination notice upon her, the landlord must act quickly to evict her or forever lose its right to do so. MCDA's eight month delay in acting upon the termination notice was for Powell's benefit. She continued to have the right to rent for a modest sum under $40.00 per month. If, at any time after receiving the notice of termination, Powell had explained she had stopped making payments because she had lost her job and could no longer afford a $50 per month payment in addition to her rent, it is clear MCDA would have considered renegotiating the payments to a more affordable figure. Only after it became evident that Powell was not going to make payments on her arrearage did MCDA proceed with the eviction. MCDA should not be punished for its forbearance.

▮ 2. The trial court ruled that the repayment schedule and the non-waiver provision of the lease are ambiguous when read together in that it is not clear whether the remedy for the tenant's default under the repayment schedule is the acceleration of the entire amount, as provided in clause 6 of the repayment schedule, or the termination of the tenancy, as provided in clause 3 of the repayment schedule. The schedule states that MCDA may take a money judgment for the entire amount or may pursue an unlawful detainer action. The trial court did not elaborate on why giving the landlord its choice of remedies creates an "ambiguity," nor did the respondent. The schedule itself makes it clear that the ten-

ant may be evicted if she does not keep current with her payments under the repayment schedule. There is no ambiguity; it is clear that failure to comply with the terms of the repayment schedule is grounds for termination of the tenancy.

3. The trial court also ruled that the non-waiver provision of the lease was unconscionable and void as against public policy, as the lease was a contract of adhesion under the criteria announced by the Supreme Court in *Schlobohm v. Spa Petite*, 326 N.W.2d 920 (Minn.1982).

It is true that there is a public policy of providing safe and sanitary housing for poor families. *See* 42 U.S.C. § 1437; Minn. Stat. § 462.415(5) (1982). However, it is also true that a non-waiver clause is not specifically prohibited from public housing leases, even though many provisions are prohibited from such leases, and, as even the respondent admits, non-waiver clauses serve a good purpose for tenants as well as landlords. The arguments respondent makes for finding the clause void as against public policy are not persuasive. Further, while the lease might technically fit the criteria of a "contract of adhesion," the fact that the lease was drawn up by a public authority statutorily obligated to provide fair housing for the poor means equity and "bargaining power" for the tenants should have been built into the lease. The non-waiver provision of this MCDA lease is not *per se* unconscionable or void as against public policy.

### DECISION

MCDA did not waive its right to terminate respondent's lease by waiting eight months after serving notice of termination before taking action to evict her. The repayment schedule and the lease are not ambiguous and provide that termination of respondent's tenancy is a remedy for her breach of the repayment schedule. The non-waiver clause in the lease is neither unconscionable nor void as against public policy.

Reversed and remanded for trial on the merits.