OPINION OF THE COURT
Harold Fertig, J.
The respondent in this summary proceeding is a handicapped tenant in a rental unit owned by the petitioner, a private landlord. The issues raised are unique to tenancies in section 8 housing and some appear to be of first impression. Her rent is partially paid by Federal rent subsidies under the section 8 Housing Assistance Payments Program for New Construction, which was established by Congress through enactment of section 8 of the Housing and Community Development Act of 1974. (See, 42 USC § 1437f.) The program is implemented by regulations promulgated by the Department of Housing and Urban Development (HUD), found at 24 CFR part 880 et seq.
Based upon the credible evidence adduced at trial, the court finds the following, to be the facts of this case. On August 11, *948 1978, the parties entered into a lease agreement for the subject premises, the respondent having met the requirements for eligibility for the section 8 program. A copy of the lease agreement was entered into evidence as petitioner’s exhibit 1. The term of the lease extended from August 15, 1978 through July 31,1980 and the total monthly rent for the unit, subject to adjustment as provided for in the HUD regulations, was $428. Of that amount, $400 was to be paid by HUD as a housing assistance payment on behalf of the tenant, and $28 was to be paid by the tenant. At the time this action was commenced, the monthly payments to be made by HUD and the tenant had been adjusted to $499 and $99, respectively.
Paragraph 10 (b) of the lease agreement between the parties provides as follows: “10. Tenant, for himself and his heirs, executors and administrators, agrees as follows: * * * (b) to keep the dwelling unit in a clean and sanitary condition, and to comply with all the laws, health and policy requirements with respect to said dwelling unit and appurtenances”.
Paragraph 4 of the lease agreement states: “Unless terminated as provided herein the Lease shall be automatically renewed for successive terms of one (1) month each at the aforesaid rental, subject to adjustment as herein provided, payable in advance without demand on the first day of each month. Each party may terminate this Lease at the end of the initial term or any successive term by giving thirty (30) days written notice in advance to the other party.” In accordance with the latter provision, the respondent was sent a notice, entered as respondent’s exhibit C, that her lease would not be renewed at the end of the term and that she must vacate the a.partment by July 31, 1980.
Subsequent to her receipt of this termination notice, the respondent remained in possession of the subject premises. The petitioner continued to collect monthly payments of rent from the respondent and from HUD under the section 8 program. The testimony was uncontroverted that, although HUD approved a new form of lease in November 1981, a copy of which was entered into evidence as petitioner’s exhibit 5, the respondent was never offered a new lease for execution. She also was not notified to appear for recertification of her income, which was last certified in 1981.
On or about July 27, 1984, the respondent was served with a notice of termination of her tenancy, which was entered into evidence as petitioner’s exhibit 4. The notice stated that the respondent’s tenancy would be terminated as of August 31, *949 1984, for material noncompliance with the terms of the lease agreement. Specifically, the respondent was charged with failing to maintain her unit by keeping it clean and removing garbage and other waste from it in a clean and safe manner and with permitting the accumulation of garbage and other waste in the unit, as well as permitting it to become infested with roaches and other vermin.
The petitioner called its exterminator as a witness. He testified that when he last treated the apartment in July 1984, he found a film of food and grease on the counters, cabinets, stove and floor of the kitchen, as well as food and garbage on the floors of the kitchen and living room. He found numerous roaches, both live and dead, throughout the apartment, with the heaviest concentrations in the kitchen a,nd bathroom. He testified that in the bathroom alone he saw 40 to 50 roaches. He observed additional roaches in holes in the bathroom walls, and stated that the inside of the bathroom door, which was off the hinges, was teeming with roaches. When he asked the respondent to remove her food from the kitchen cabinets to enable him to treat them, she refused to cooperate. The testimony of the exterminator, whom the court found to be highly credible, as well as the photographs of the interior of the unit which were admitted into evidence, indicated that the respondent had indeed permitted garbage and waste to accumulate in the apartment and had permitted it to become heavily infested with roaches.
The termination notice served on the respondent in response to the aforesaid conditions, in addition to specifying the grounds for termination of the tenancy, included the following provision: “You have 10 days within which to discuss the proposed termination of your tenancy with the Landlord. The 10 day period will begin on the earlier of the date this notice was hand delivered to your unit or the day after this notice is mailed. If you request the meeting, Landlord agrees to discuss the proposed termination with you. You have the right to defend any summary proceeding which is brought in Court against you to terminate your tenancy.”
Following service of said termination notice in July 1984, the petitioner requested and accepted section 8 housing assistance payments from HUD on behalf of the respondent for the months of August and September 1984, but refused to accept the respondent’s tender of her portion of the rent for those months. The housing assistance payment covering September 1984 was made on September 4, 1984. The instant holdover summary proceeding was commenced on or about September 5, 1984.
*950 The parties have raised several issues requiring resolution. These are, specifically, what the terms of the respondent’s tenancy were at. the time she was served with the termination notice; whether the notice complied with Federal regulations; whether the HUD housing assistance payments are deemed to be rent payments; and, if so, whether the petitioner’s acceptance of the HUD payment after the termination date and before the commencement of this summary proceeding effected a waiver of the termination notice. These issues arise primarily due to the heavily regulated nature of a section 8 tenancy.
The purpose of the section 8 program is to aid lower income families in obtaining a decent place to live an<I to promote economically mixed housing (42 USC § 1437f [a]). In order to qualify for the section 8 new construction program, a prospective tenant must have an income within the HUD specified limits set forth at 24 CFR parts 812 and 889. The owner of the housing project is responsible for determining whether the applicant is eligible (24 CFR 880.603 [b]). Once accepted for the program, the tenant leases an assisted unit, paying the project owner “tenant rent,” which is set at an amount between 15% and 25% of the tenant’s income. HUD pays the balance of the total rent, or “contract rent,” for the assisted unit by making monthly payments, known as “housing assistance payments”, directly to the project owner (24 CFR 880.101 [b], [c]). The project owner is responsible for reexamining the tenant’s income at least once each year, verifying the information provided by the tenant, and making any necessary adjustments in the tenant’s rent payment to correspond with any changes in the tenant’s income (24 CFR 880.603 [d]).
TERMS OF RESPONDENT’S TENANCY
In the case at bar, the parties entered into a lease agreement in 1978 which provided that the lease would be renewed automatically at the end of its two-year term for successive terms of one month each unless the lease were terminated by either party. Although the petitioner served the respondent with a termination notice effective July 31, 1980, which under the terms of the lease terminated the tenancy, the respondent continued to reside in the apartment and the petitioner accepted both her rent payments and the HUD assistance payments made on her behalf.
The petitioner’s acceptance of rent for the period following the expiration of the lease effected a waiver of the termination notice, and must be deemed to be an admission of the continuation of the tenancy {see, Rasch, NY Landlord & Tenant § 1019 *951 [2d ed]; 33 NY Jur, Landlord and Tenant § 59). In addition, Real Property Law § 232-c provides that a landlord’s acceptance of rent from a holdover tenant for any period subsequent to the expiration of the term of the lease creates a month-to-month tenancy, in the absence of an agreement, either express or implied, providing otherwise (Real Property Law § 232-c; see also, 34 NY Jur, Landlord and Tenant §§ 404, 410-411). Such a holdover tenancy impliedly continues on the same terms as those contained in the original instrument, with the exception that the term is on a month-to-month basis, unless the parties prove otherwise (Tubbs v Hendrickson, 88 Misc 2d 917; 34 NY Jur, Landlord and Tenant § 413; City of New York v Pennsylvania R.R. Co., 37 NY2d 298). At the expiration of the original lease term, the actions of both parties clearly implied a continuation of the tenancy on the terms of the original agreement, but as a month-to-month tenancy, in accordance with the lease and with State law.
However, the respondent is afforded additional protection as a section 8 tenant. It is well settled that a section 8 housing assistance tenant has a statutory entitlement to continue in the occupancy of the rental unit in the absence of good cause for eviction (Swann v Gastonia Housing Auth., 675 F2d 1342,1346). In addition, such a tenant has a constitutionally protected property right to continued occupancy in the absence of good cause for eviction, even though the term of the lease lapses (Mitchell v United States Dept. of Housing & Urban Dev., 569 F Supp 701). Thus, even though the respondent’s tenancy is for a month-to-month term and the lease between the parties provided for termination by either party at the end of the initial term or any successive term upon 30 days’ notice, the respondent is nevertheless protected by current HUD regulations and has a statutory entitlement to continued occupancy of the subject premises. Her tenancy may be terminated only for good cause, in accordance with the regulations. The petitioner’s failure to comply with its obligation to recertify the respondent’s income as regulations require, and its failure in 1981 to offer her the new HUD approved lease which conformed with current regulations, is not the fault of the respondent and cannot be held against her. The petitioner seems to have acknowledged the respondent’s protected status as a section 8 tenant, because the second termination notice served by the petitioner on the respondent in July 1984 purported to terminate the tenancy for good cause in accordance with the regulations, on the ground of the respondent’s material noncompliance with the terms of the lease agreement.
*952 SUFFICIENCY OF TERMINATION. NOTICE
Regulation 880.607 states that the only grounds upon which a section 8 new construction tenancy can be terminated are (1) material noncompliance with the lease; (2) material failure to carry out obligations under any State landlord and tenant act; or (3) other good cause (24 CFR 880.607 [b] [1]). The term material noncompliance with the lease is defined as including “(i) one or more substantial violations of the lease, or (ii) repeated minor violations of the lease which disrupt the livability of the building adversely, affect the health or safety of any person or the right of any tenant to the quiet enjoyment of the leased premises and related facilities, interfere with the management of the building or have an adverse financial effect on the building.” (24 CFR 880.607 [b] [3].)
The regulation also sets forth the requirements for giving a tenant notice of termination based upon each of the three enumerated grounds. In all instances, the landlord must give the tenant a written notice of any proposed termination of tenancy, which must state the grounds for termination and that the tenancy is terminated on a specified date, and which must advise the tenant that he has an opportunity to respond to the landlord (24 CFR 880.607 [c] [1].) Where the termination notice is based upon material noncompliance with the lease, as in the case at bar, the time of service of the notice must be in accordance with the lease and with State law. (24 CFR 880.607 [c] [2].)
The written termination notice served by the petitioner on the respondent on or about July 27, 1984, set forth the grounds for termination as follows: “Landlord hereby terminates the agreement for your material noncompliance with the terms of the Agreement. You have violated Paragraph 10 (b) (1) of the Agreement in that you have failed and still fail to maintain your unit by keeping it clean. You have violated Paragraph 10 (b) (6) of the Agreement in that you have failed and still fail to maintain your unit by removing garbage and other waste from it in a clean and safe manner. You have permitted the accumulation of garbage and other waste in your unit and have permitted the unit to become infested with roaches and other vermin.”
The court notes that the designated paragraphs 10 (b) (1) and 10 (b) (6) of the lease agreement refer to provisions in the new lease form, which the petitioner never offered to the respondent for signature. However, paragraph 10 (b) of the lease agreement entered into by the parties in 1978, the terms of which were still in effect at the time the notice was served, required the tenant *953 “to keep the dwelling unit in a clean and sanitary condition, and to comply with all the laws, health and policy requirements with respect to said dwelling unit and appurtenances”. Consequently, the court finds that the termination notice sufficiently apprised the respondent of the grounds for the proposed termination of her tenancy in accordance with regulation 880.607 (c) (1). The notice also complied with the remaining requirements of the regulation in that it specified a date of termination, advised the respondent of her right to respond, and afforded the respondent more than 30 days’ notice in compliance with the lease and with State law.
In view of the court’s determination that the terms of the 1978 lease were in effect at the time of service of the second termination notice, which sought to terminate the respondent’s tenancy for noncompliance with the lease, the court rejects the respondent’s argument that the termination could only have been based upon “other good cause” pursuant to regulation 880.607 (b) (1) (iii). Since “other good cause” is the only ground for termination wherein the landlord is required to give the tenant prior notice that his actions constitute a basis for termination of the tenancy, which amounts to a notice to cure, no such prior notice was required here. (See, 24 CFR 880.607 [b] [2].)
ACCEPTANCE OF HUD PAYMENT AS A
BAR TO THE HOLDOVER PROCEEDING
The remaining issue presented in this case, which appears to be one of first impression, is whether a landlord is precluded from maintaining holdover summary proceedings against a section 8 tenant where the landlord has rejected the tenant’s share of the rent, but accepted a rent subsidy payment made by HUD on behalf of the tenant which covers a period after the termination date set forth in the termination notice and which was made prior to the commencement of the summary proceedings.
It is clear that where a landlord accepts rent after giving a tenant notice of termination and before commencing summary proceedings, the proceedings are not maintainable if the rent is for a period subsequent to the termination date set forth in the notice (Amalgamated Housing Corp. v Luxenberg, 8 Misc 2d 831). By accepting rent for a period after the termination date, the landlord cannot deem the tenant holding over without the landlord’s permission. (Id., at p 834.) Such acceptance of rent effects a waiver of the notice, and is deemed to be an admission of the continuation of the tenancy (see, Rasch, NY Landlord & Tenant § 1019 [2d ed]).
*954 In order for the petitioner’s acceptance of the HUD housing assistance payment for the month of September 1984 to constitute a waiver of the termination notice, such payment must be considered rent. The petitioner contends that the housing assistance payments made by HUD on behalf of a tenant are not rent because the payments are not made by the tenant to the landlord. The petitioner further argues, since a landlord may not bring a nonpayment proceeding against a tenant for HUD’s failure to make an assistance payment on the tenant’s behalf, his remedy lying against HUD rather than against the tenant, that conversely, a landlord’s acceptance of the HUD payment should not bar a holdover proceeding against the tenant where the landlord has refused to accept the tenant’s share of the rent. The court finds both arguments to be without merit.
Review of the Low Income Housing Act, at 42 USC § 1437f, indicates that the Legislature intended section 8 assistance payments to constitute payments of rent. The statute provides, “The amount of the monthly assistance payment with respect to any dwelling unit shall be the difference between the maximum monthly rent which the contract provides that the owner is to receive for the unit and the rent the family is required to pay under section 1437a (a) of this title”. (42 USC § 1437f [c] [3].) The HUD regulations promulgated in accordance with the act clearly show that section 8 housing assistance payments are considered to be rent payments. Regulation 880.101 (c) states, “The total amount received by the owner for rent is called the contract rent”. (24 CFR 880.101 [c]; emphasis added.) At regulation 880.201, the term “contract rent” is again defined as “The total amount of rent specified in the Contract as payable by HUD and the tenant to the owner for an assisted unit.” (24 CFR 880.201; emphasis added.)
In Swann v Gastonia Housing Auth. (502 F Supp 362, affd in part, revd in part on other grounds 675 F2d 1342, supra), the United States District Court considered the nature of section 8 housing assistance payments, stating, “The Section 8 private landlord receives numerous benefits from participating in the program. The monthly risk of not receiving rent from the tenant is reduced because the Housing Authority is paying the majority of the rent and the tenant is paying an amount within his means.” (Id., at p 365.)
On appeal, the United States Court of Appeals, Fourth Circuit, in its discussion of the section 8 program stated, “The government pays a major portion of each month’s rent directly to the landlord and it will pay eighty percent of the rent for up to *955 sixty days if the tenant vacates in violation of the lease.” (Swann v Gastonia Housing Auth., 675 F2d, at p 1346, supra.) Thus, there was no question but that housing assistance payments made under section 8 are payments of rent.
Furthermore, in Central. Brooklyn Urban Dev. Corp. v Copeland (122 Misc 2d 726), the New York City Civil Court dealt with section 8 housing assistance payments in a context which has direct bearing on the case at bar. There, the landlord demanded and received section 8 subsidies made on behalf of a tenant after the issuance and execution of a warrant of eviction. The court found the landlord’s receipt and acceptance of these payments to constitute a waiver of the warrant with intent to reinstate the tenancy. (Id., at pp 729-730.)
In accordance with the relevant statute, regulations and case law as cited above, this court finds that housing assistance payments made by HUD on behalf of a section 8 tenant must be considered to be payments of rent. A landlord cannot accept the major share of the rent from HUD, reject the tenant’s share, yet maintain that rent has not been accepted. Consequently, the petitioner’s acceptance of the housing assistance payment made on behalf of the respondent for the month of September 1984, which constituted approximately 80% of the total rent for the unit, must be deemed a waiver of the notice of termination because it was accepted after the termination date set forth in the notice and before the commencement of this proceeding.
Although the evidence adduced at trial that the respondent had violated the terms of her agreement with the petitioner by failing to maintain the apartment in a clean condition and permitting it to become heavily infested with roaches, the proceeding must be dismissed with great reluctance in light of the foregoing. Final judgment is directed for the respondent dismissing the petition herein.