## CORCORAN MANAGEMENT COMPANY, INC. *vs.*
## PHILLIP WITHERS.

Suffolk. December 11, 1986. — September 29, 1987.

Present: BROWN, QUIRICO, & WARNER, JJ.

*Landlord and Tenant,* Eviction, Rent, Waiver, Tenancy at will, Tenancy at sufferance, Termination of lease, Notice. *Waiver. Housing Court,* Jurisdiction. *Evidence,* Judicial notice, Federal regulation.

In a summary process action under G. L. c. 239 by a landlord to recover possession of residential premises after termination of the lease by a notice to quit, the trial judge's determination that the tenant had violated the provisions of the lease with respect to other tenants' rights was supported by the evidence. [740-741]

In an eviction proceeding, payment and acceptance of rent in advance of a certain rental period after the tenant had received a valid notice to quit, did not, in the circumstances, create a tenancy at will, where the parties had agreed in writing that such acceptance would not constitute a waiver of the landlord's right to possession under the notice to quit. [741-746]

On a tenant's appeal from a judgment in favor of his landlord for possession of residential premises, certain Federal regulations which were not raised as a defense in the tenant's answer or ever made part of the trial record could not furnish the basis for an appellate argument [746-747], and, in any event, any alleged errors based on procedural irregularities in a landlord-tenant grievance proceeding required by the same Federal regulations could provide no ground for relief, where the tenant subsequently received a trial de novo in the Housing Court [747-748]

SUMMARY PROCESS. Writ in the City of Boston Division of the Housing Court Department dated January 24, 1985.

The case was heard by *Patrick J. King,* J.

*Susan M. Carney* (*James Verner Moore* with her) for the defendant.

*John T. Wallace* for the plaintiff.

QUIRICO, J. This is an action under G. L. c. 239 by which the Corcoran Management Company, Inc., a landlord, seeks to recover possession of premises allegedly unlawfully held by

Phillip Withers, a tenant, after the landlord's termination of a lease by notice to quit. The premises in issue consist of Apartment No. 563, at 32 Fidelis Way, in a residential development owned by the Boston Housing Authority and commonly referred to as the "Commonwealth Development" in the Brighton section of Boston.[1] The action was entered and tried in the Housing Court of the City of Boston, and it is before us on the tenant's appeal from a judgment awarding possession of the premises to the landlord and dismissing counterclaims of the tenant. We affirm the judgment.

The tenant's actions and conduct in his apartment and on other portions of the Commonwealth Development were the cause of a number of complaints by other tenants to the landlord, and on each such occasion the landlord sent written notices to the tenant of his violations of provisions of his lease. On April 9, 1984, the tenant was informed of complaints by other tenants about noise disturbances in his apartment. On April 23, 1984, he was asked to attend a private conference with the landlord to discuss complaints about his violation of the lease by having an "illegal occupant living in [his] apartment." On May 25, 1984, the landlord wrote to the tenant that it had "recently had a complaint from a guest of a Commonwealth resident that you made sexual advances toward him in the elevator of 14 Fidelis Way." The same letter also told of complaints about the behavior of a person who was living with the tenant in violation of the terms of the lease. On June 18, 1984, the landlord wrote to the tenant about three matters. One was that the same person who was thought to be living in the tenant's apartment illegally was still there. The second was that the tenant's sister and her three children were thought to

---

[1] Although the Commonwealth Development is owned by the Boston Housing Authority, the lease involved states that "Corcoran Management Company, Inc., as Managing Agent for the Boston Housing Authority, the owner (Management), hereby rents to Phillip Withers as Tenant," Apartment 563, 32 Fidelis Way, Boston. Hence, all references to "landlord" are to be construed as references to Corcoran in its capacity as "Managing Agent for the Boston Housing Authority" of the Commonwealth Development.

be living in the apartment illegally. The third was again about "noisy disturbances" coming from the tenant's apartment.

On July 19, 1984, the landlord caused a notice of termination of the lease and to vacate the premises in thirty days to be served on the tenant. This was as a result of the complaints described above and some other matters involving the tenant. This was followed by conferences and discussions which resulted in the execution of a written agreement on August 29, 1984, in which (a) the tenant admitted many of the lease violations about which the landlord had received complaints, and he agreed to comply with a list of specific terms and conditions stated therein which were in addition to the provisions of the lease, and (b) the landlord agreed that it would "forbear pursuing . . . the eviction proceedings currently underway." One of the important provisions of the new agreement was the following:

> "5. Phillip Withers specifically acknowledges and agrees that Corcoran Management Company is not waiving the violations of the Lease as set forth in this Agreement, or in the Notice of Terminating of Tenancy. Should Phillip Withers breach the terms of this Agreement or any of the covenants of the Lease Corcoran Management Company shall have the right to rely upon these incidents as additional grounds for eviction. *Phillip Withers also agrees that the acceptance of any money either as rent or use and occupation shall not be deemed as a waiver of any conduct or incident which may give rise to an eviction*" (emphasis supplied).

On October 29, 1984, the landlord caused a letter to be delivered to the tenant inviting him to a private conference to be held on November 1, 1984, to discuss complaints about the tenant's alleged violations of the lease and of the agreement of August 29, 1984, with particular reference to "disturbances involving police." After the conference, the landlord caused the following papers to be sent to the tenant as enclosures to a covering letter: (a) a notice that the landlord had decided to

terminate his lease and informing him that he could request a grievance hearing challenging that decision, (b) a notice of its intention to terminate the tenancy, stating the reasons therefor, and again informing him of his right to request a grievance hearing, and (c) a notice of the termination of his tenancy effective thirty days thereafter and informing him that, if he failed to vacate, the landlord will "commence the appropriate action in court."

The tenant availed himself of the grievance hearing, which was held on December 11, 1984. After the hearing the panel decided that the matter should "proceed with eviction" for the tenant's violation of specifically identified provisions of the lease and of the agreement of August 29, 1984. The landlord then caused a new notice to be served on the tenant on December 20, 1984, notifying him that the landlord terminated his tenancy and that within thirty days from the receipt of the notice he was to quit and deliver up the premises in question. The notice again informed the tenant that, if he failed to vacate, the landlord would commence the appropriate action in court.

The tenant did not vacate within thirty days after the notice to quit was served on him on December 20, 1984 — he has not vacated yet — and on February 11, 1985, the landlord entered this action to recover possession. The tenant filed an answer admitting that he was in possession of the premises in question, but he denied that such possession was unlawful or against the right of the landlord. He then added two defenses as follows: (1) that he denied that he had violated any provision of the lease of April 1, 1984, or any provision of the agreement of August 29, 1984; and (2) that he had tendered to the landlord the rent for the months of January, February and March, 1985, and the landlord had accepted the payments without reservation of any rights arising out of its having served the notice on December 20, 1984, to quit, which payments the tenant contended "constituted a renewal of the lease."

Those defenses were followed by three counts in counterclaim. The first counterclaim seeks damages from the landlord because of its alleged "attempts to evict him [the tenant] because

of his race." That count was later withdrawn.[2] The second counterclaim seeks damages from the landlord because of its alleged violation of both the Massachusetts and United States Constitutions as to rights of privacy and association. This claim arises out of the lease provision prohibiting family members and other persons from staying in the leased apartment overnight without the prior express written approval of the landlord. The third counterclaim seeks treble damages plus costs and attorneys' fees for alleged violation of G. L. c. 93A.

The case was tried before a judge of the Housing Court who, on July 9, 1985, filed a document entitled "FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT," ordering that a judgment be entered "in favor of the plaintiff [landlord] for possession and costs . . . [and] dismissing the defendant's [tenant's] counterclaims." Such a judgment was entered on the following day, and the tenant seasonably appealed therefrom.

A. *Landlord's Claim for Possession.*

1. The tenant's defense to this action is in part a denial that he ever violated any of the terms, provisions or conditions of the lease or of the agreement of August 29, 1984. The trial judge found that the tenant violated the following paragraphs of the lease: 8-a, which required him to "live in a peaceful way, respecting the rights of his neighbors to privacy and quiet," 10-2, which provided that the lease could be terminated by the landlord for the "[r]easonable likelihood of serious repeated interference with the rights of other tenants," and 10-5, which provided that it could also be terminated for the tenant's "[c]reation or maintenance of a serious threat to the health or safety of other tenants." The judge then recited subsidiary facts of the conduct of the tenant which constituted violations of those lease provisions. Those findings are supported by the evidence presented at the trial which consisted in large part of

---

[2] The statement that the count was withdrawn is based on the following sentence in the trial judge's decision in this case: "At the time of trial, the counterclaim alleging racial discrimination was withdrawn." The tenant's counsel has not questioned the judge's statement.

oral testimony. We therefore consider them in light of the provision of Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." For a discussion of what is meant by the words "clearly erroneous" see *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 160-161 (1977). The findings of the trial judge in the present case were not "clearly erroneous." We do not substitute our view on the weight and credibility of the evidence for that of the trial judge.

2. The tenant's second defense is that, assuming that he had violated some provision of the lease and that by reason thereof the landlord had the right to terminate the lease and seek possession of the leased premises, in the circumstances of this particular case the landlord had waived that right by reason of accepting certain payments from the tenant after the notice to quit served on December 20, 1984, took effect on January 19, 1985. The facts and dates pertinent to this defense are the following. The rent payable under the lease was forty dollars per month, payable in advance on the first day of each month. Most of the tenants in the Commonwealth Development paid their rent in about the first five days of the month. All payments were made to an employee of the landlord at the Development. On November 1, 1984, the tenant made a payment of forty dollars for which he received a receipt which said in one place that the payment was "For November's rent" and in another place that it was for "use and occupancy only." We have no information in the record before us about any payment in or for the month of December, 1984. On January 2, 1985, the tenant again made a payment of forty dollars for which he received a receipt which described the payment as "For Rent." As of January 1, 1985, the tenant owed rent in advance only through January 19, 1985, as of which date he had been notified to vacate the premises. Therefore he had paid, and the landlord had accepted, payment in advance for the last twelve days of January. On February 4, 1985, the tenant paid forty dollars for which he received a receipt which described the payment as

"For rent." On March 4, 1985, the tenant paid forty dollars for which he received a receipt which described the payment as "For March rent 'For use and occupancy only' rent."

The tenant argues that, when the landlord's notice of December 20, 1984, took effect thirty days thereafter, on January 19, 1985, the tenant would have become a tenant at sufferance owing payment only for his continued use and occupation of the premises after January 19, 1985, with such payment to be in arrears, and not in advance. G. L. c. 186, § 3. He argues further that by reason of his tender of payment in advance for the last twelve days of January and the month of February, 1985, and the landlord's acceptance of such payment as "rent," he became a tenant at will, and the landlord thereby waived its right to recover possession under the notice of December 20, 1984.

The tenant's argument is rooted in some early judicial decisions and is recognized in more recent decisions but not without some qualifications and exceptions.

In *Howard* v. *Merriam*, 5 Cush. 563, 571 (1850), the court said: "If one in possession of land is a mere tenant at sufferance, he is bound to go out without notice, on the entry of the landlord; if the landlord permits him to remain, and especially if he receives rent of him, then he becomes [a] tenant at will," and is entitled to a notice to terminate that tenancy before the landlord can take possession.

In *Benton* v. *Williams*, 202 Mass. 189, 192-193 (1909), the rule is stated somewhat differently as follows: "The continued occupation by a tenant after the expiration of his term with the knowledge and consent of his landlord and the payment and receipt of rent at the same rate and upon the same rent days as were required by the lease *is evidence sufficient to show an agreement for a tenancy at will.* A possession, recognized by the parties as based upon such stated rent payments, is ordinarily inconsistent with a mere occupancy devoid of any substantial right on the part of the tenant, which characterizes a tenancy at sufferance. But for R. L. c. 129, § 3 [now G. L. c. 186, § 3], which imposes upon a tenant at sufferance liability for rent during his actual detention of the premises, the payment of

rent would be so wholly at variance with the legal conception of a tenancy at sufferance as to require a ruling that it was conclusive evidence of a tenancy at will. *Howard* v. *Merriam*, 5 Cush. 563, 571 [1850]. . . .But in view of that statute the evidence does not seem quite so conclusive as to warrant a ruling as matter of law that the defendant became a tenant at will. It was a fact to be determined in the light of all the testimony and the attendant circumstances whether a contract existed between the parties by fair implication" (emphasis supplied; citations omitted).

In *Jones* v. *Webb*, 320 Mass. 702 (1947), the landlord sold a dwelling which was occupied by a tenant at will, and the purchaser sent the tenant a notice of termination of the tenancy and to vacate the premises "on or before January 1st, 1945." The tenant thereafter, on or about the first day of each month, sent to the new owner, and the latter accepted and cashed, checks stating that they were for payments of rent in advance; and in the third of those months the landlord brought an action to recover possession without having given any new notice of termination or to quit the premises. The court said, at 706: "Unless there was a tenancy at will on the part of someone, be it the defendant or his son, the plaintiffs were not entitled to monthly payments of rent in advance, which was the only basis on which the checks rightfully could be received and negotiated. The acceptance of rent not due was necessarily inconsistent with the enforcement of the right to enter."

In *Staples* v. *Collins*, 321 Mass. 449 (1947), the defendant's lease expired on November 10, 1945, and she continued in possession thereafter. On December 1, 1945, which was the regular rent day, she paid the rent in advance for the month of December, and the plaintiff landlord accepted it. The court said, at 451: "It is difficult to attribute a payment and acceptance of rent for a period in advance of occupancy to mere use and occupation for which a tenant at sufferance is made liable by G. L. (Ter. Ed.) c. 186, § 3, for such time only as he 'may occupy or detain' the land. *Under our decisions it would seem that such payment and acceptance of rent, standing alone, are prima facie proof of the creation of a tenancy at will, . . . and*

*that the facts of payment and acceptance are controlling, if nothing further appears*" (emphasis supplied; citations omitted).

Although it has long been the general rule that, if, after the effective date of a valid notice to terminate a tenancy, the tenant tenders, and the landlord accepts, a payment as rent in advance for a period after the termination of the tenancy, such payment and acceptance are prima facie evidence of the landlord's waiver of his right to recover possession unless he gives a new notice, it has also long been a part of the general rule that certain acts or conduct may prevent or negate the inference or presumption of such a waiver by the landlord.

In *Kimball* v. *Rowland*, 6 Gray 224 (1856), a tenant at will failed to pay his rent when due and the landlord gave him a fourteen days' notice to vacate the premises on that ground. On the following day the tenant "tendered the amount of rent to the [landlord], who took it, and gave the [tenant] a receipt therefor, in which he expressly reserved his claim to possession of the premises under his notice; and the [landlord] refused to give any other form of receipt." The court said, at 226: "[T]he receipt of the money due for rent, after such notice given, will not necessarily operate as a waiver of [the landlord's right to possession], if the landlord, at the time of receiving such rent, gives notice that he does not thereby intend to waive his right to terminate his lease, or revoke his notice. If the landlord received such rent without protest, or notice of any sort, it might be inferred, from his silent acceptance of the rent in arrear, that, the cause of his notice being removed, it was his intent to revoke it, and waive his right to terminate his lease, . . . But it is a presumption that may be rebutted, and the mere acceptance of rent, under a protest that he does not thereby waive, will not raise such presumption; for the money is his due, and he has a right to receive it, without barring his right to terminate the tenancy at will, which is the direct object of the suit" (citations omitted). For decisions to the same effect and with the same result, see *Miller* v. *Prescott*, 163 Mass. 12 (1895), *Newman* v. *Sussman*, 239 Mass. 283 (1921), and *Mastrullo* v. *Ryan*, 328 Mass. 621 (1952).

A tenant whose right to possession has been terminated by valid notice of the landlord cannot unilaterally continue to send

the landlord monthly rent payments and by that alone prevent the landlord from prosecuting his summary process action. As demonstrated in *Slater* v. *Krinsky*, 11 Mass. App. Ct. 941 (1981), a landlord may accept the payments and at the same time negate any waiver of his notice to quit by appropriate endorsement of his reservation of rights on the checks before cashing them, or by written notice that such checks would be received only for use and occupancy, even when sent by the tenant as payments in advance.

In *McCarthy* v. *Harris*, 17 Mass. App. Ct. 1002 (1984), the landlord gave his tenant a notice terminating his tenancy. The notice also stated that "any monies accepted by the [landlord] after . . . receipt of this notice [are] accepted for the use and occupation of said premises without waiving any rights pursuant to this notice and reserving all other rights." The tenant continued to send checks for each month in advance, stating on their faces that they were for "rent"; and the landlord endorsed each of them "All monies accepted as payment for use and occupation of premises and without in any way waiving any of landlords' rights, especially those pursuant to notice to quit." The trial judge found that the landlord had not waived any rights to possession by thus cashing the checks. In upholding the finding, this court said in part, at 1003: "There was sufficient evidence, other than the payment and acceptance, to permit the judge to make the finding that there was no waiver of the notice to terminate the tenancy. That notice was unequivocal in stating that any monies paid by the [tenants] to the [landlord were] accepted for use and occupancy of the premises and did not waive any of the [landlord's] rights pursuant to the notice."

The same may be said by this court in the present case. The trial judge in this case made some subsidiary findings from which he concluded: "On the facts of this case, I find that the landlord never intended to waive the landlord's right to possession and did not in fact waive the right to possession," citing the *McCarthy* case, *supra*. There was ample evidence before the trial court in this case to support the findings which he made. A very important part of that evidence was the provision

quoted earlier in this opinion from the agreement between the landlord and the tenant dated August 29, 1984, to the effect that: "Phillip Withers also agrees that the acceptance of any money either as rent or use and occupation shall not be deemed as a waiver of any conduct or incident which may give rise to an eviction." The tenant, Withers, contractually bound himself to that provision in consideration of the landlord's terminating a summary process case which it had started against the tenant. That provision clearly permitted the landlord to receive future payments as payments for use and occupation even though the word "rent" may appear on the tenant's checks or money orders, or on the receipts given by the landlord to the tenant for the payments. The tenant admitted during his testimony that the landlord never told him that as a result of his payments it would discontinue the summary proceedings against him. Rather he stated that he was told by the landlord's agent that it would continue with the proceeding. The tenant said he believed that and understood what it meant. The trial judge's finding of fact that "the landlord never intended to waive the landlord's right to possession and did not in fact waive the right to possession" was supported by evidence obviously accepted as truthful, and the finding was not clearly erroneous. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974); *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. at 160-161.

3. At some point during the trial, the tenant tried to raise an additional issue which he described as the "Court's Lack of Subject Matter Jurisdiction." This issue had not been raised in the tenant's answer to the landlord's original complaint in the summary process action. The trial judge disposed of that issue in his decision: "At the time of trial, the tenant contested that this Court had jurisdiction over the matter because of the failure of the landlord to comply with various obligations imposed on the landlord by the [F]ederal government in connection with the termination of tenancy proceedings. This issue is not raised in the answer, the tape of the grievance hearing had not been transcribed in time for the trial and defense counsel never provided the Court with copies of the various [F]ederal regulations which form the basis of this defense. Under these

circumstances, the Court declines to take judicial notice of the [F]ederal regulations and finds in favor of the landlord with respect to this defense. *Mastrullo* v. *Ryan*, 328 Mass. 621 (1952)."

A substantial portion of the tenant's brief was devoted to the argument of this issue and, in particular, to the argument that this issue involves a question of jurisdiction and that therefore the issue can be raised at any time although not raised in the answer to the complaint. The effort does not succeed. To the extent that the tenant is relying on Federal regulations, they were never presented to the trial judge, and the tenant is too late in appending them to his brief. The trial judge did not have the benefit of them as a basis for his decision of the case, and they cannot be made a part of the trial record by their inclusion as an appendix to the tenant's brief.

The tenant's argument that the Housing Court lacked jurisdiction to hear and decide the summary process case appears to be based on a contention that the Federal regulations require the holding of the preliminary hearing which was held by the grievance panel, that there were some errors of law with reference to evidence either admitted or excluded at that hearing, that in that respect, and in some other respects not clearly explicated in the brief, the tenant was deprived of due process, with the claimed result that the court could have no jurisdiction, and had no jurisdiction, to entertain, try and decide the summary process case which followed the decision of the grievance panel. There is no merit to this argument.

The grievance panel hearing was held before three persons who were neither judges nor lawyers. The applicable Federal regulation, 24 C.F.R. § 966.56(f) (1987), provides in pertinent part that "[t]he hearing shall be conducted informally by the hearing officer or hearing panel and oral or documentary evidence pertinent to the facts and issues raised by the complaint may be received without regard to admissibility under the rules of evidence applicable to judicial proceedings." The decision of the grievance hearing panel is final in some respects as to the public housing authority, but it "shall not constitute a waiver of, nor affect in any manner whatever, any rights the complain-

ant [in this case the tenant] may have to a trial *de novo* or judicial review in any judicial proceedings, which may thereafter be brought in the matter." 24 C.F.R. § 966.57(c) (1987). If there were any errors in the proceedings before the grievance panel, they provide no cause for any relief to the tenant in the appeal before this court since he obtained a trial de novo which superseded all that had occurred at the grievance panel hearing.

There are yet a number of alleged errors covered by the tenant's brief which we have not discussed. We have reviewed the record and brief as to all of them and conclude that they involve nothing on which the tenant is entitled to relief on this appeal. As to some there are questions whether the foundation was established for an appeal. Mass.R.Civ.P. 46, 365 Mass. 811 (1974). Others appear to be based on documents or other evidence excluded at trial but not sufficiently incorporated in any offer of proof or otherwise identified when excluded. Many of the errors alleged by the tenant are the product of an overly lawyered trial which concentrated too much on abstract rules of law or procedure, and nice but therefore fragile technicalities, as straws at which to grasp for relief. We hold that they afford the tenant no relief on the facts found by the trial judge in this case.

B. *Tenant's Counterclaims.*

As noted earlier in this opinion,[3] the tenant withdrew his first counterclaim, which alleged racial discrimination by the landlord in seeking to evict the tenant. The second counterclaim seeks recovery for the landlord's alleged interference with the tenant's rights of privacy and association. The third counterclaim seeks treble damages plus costs and attorneys' fees for alleged violation of G. L. c. 93A by reason of the landlord's alleged wrongful conduct as stated in the first two counts of the counterclaim.

The trial judge made findings of fact in which he concluded that the tenant had failed to prove the allegations of the second and third counterclaims and also found that "[n]o damages have been proven." The tenant's appeal from the judge's decision expressly stated that he was appealing "from the final

---

[3] See n.2 on this same subject.

judgments entered . . . dismissing Defendant's [tenant's] counterclaims and awarding possession to Plaintiff [landlord]." However, the tenant's brief makes no mention of the dismissal of his counterclaims, and the landlord's brief notes that "[a]s the Court's ruling in favor of the Landlord on the counterclaims is not raised on appeal this Court need not consider this issue further." This court treats the tenant's appeal from the dismissal of his counterclaims as waived. Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958). We do not address that subject further.

*Judgment affirmed.*