400 S.E.2d 296

**DUNBAR HOUSING AUTHORITY**

v.

**Virginia NESMITH.**

**No. 19605.**

Supreme Court of Appeals of West Virginia.

Dec. 14, 1990.

Mark E. Kauffelt, Kauffelt & Kauffelt, Charleston, for Dunbar Housing Authority.

David Anthony Sade, Legal Aid Soc. of Charleston, Charleston, for Virginia Nesmith.

MILLER, Justice:

In this appeal, Dunbar Housing Authority (DHA) complains of a ruling of the Circuit Court of Kanawha County, which dismissed its suit to evict Virginia Nesmith, a tenant. The circuit court ruled that be-

cause DHA had accepted rent on behalf of Ms. Nesmith after giving notice of intent to evict, it had waived the claimed breach of the lease and was precluded from maintaining the eviction proceedings as a matter of law. We disagree.

## I.

DHA operates a federally subsidized housing project in Kanawha County pursuant to provisions of Title 24 of the Code of Federal Regulations (C.F.R.). Under Subpart B, Section 966.50, *et seq.*, a tenant in such a project is entitled to timely notice of termination of the lease and a right to a grievance hearing by a panel selected by the parties. Until the panel decides the grievance, the landlord may not institute eviction proceedings.[1]

On April 28, 1989, DHA issued a notice of termination of the lease to Ms. Nesmith stating that she had violated the lease by allowing an unauthorized person, her brother, to reside in her apartment, by failing to report his income, and by giving false information to DHA as to her income and family composition. Ms. Nesmith sought a grievance hearing. On August 16, 1989, a hearing was held, and, on August 29, 1989, the hearing panel issued an opinion in favor of DHA. Thereafter, DHA served Ms. Nesmith with a thirty-day notice to vacate.

When Ms. Nesmith failed to vacate by October 1, 1989, DHA filed suit to have her evicted pursuant to W.Va.Code, 55–3A–1, *et seq.*[2] The case was removed to circuit court, and trial was set for November 30, 1989. Prior to trial, Ms. Nesmith filed a motion to dismiss in which she claimed that DHA had accepted rental payments after the original notice to terminate and, therefore, had waived its right to evict. The circuit court agreed and dismissed the suit.

## II.

■ We begin by observing that we are dealing with a federally funded low-income housing project where the landlord-tenant relationship is controlled to some extent by federal statute and by regulations of the Department of Housing and Urban Development (HUD). In addition to the rent paid by the tenant, the landlord receives a rent supplement payment from HUD. A landlord's right to terminate the lease is restricted not only by the grievance procedures outlined in Part I, *supra*, but also by 24 C.F.R. § 880.607(a) and (b).[3] However, it appears that the question of whether a landlord of a federal low-income housing project has waived a breach of the lease by

---

1. Section 966.58 relates to Public Housing Authority (PHA) eviction actions and provides:

   "If a tenant has requested a hearing in accordance with 966.55 on a complaint involving a PHA notice of termination of the tenancy and the hearing officer or hearing panel upholds the PHA's action to terminate the tenancy, the PHA shall not commence an eviction action in a State or local court until it has served a notice to vacate on the tenant and in no event shall the notice to vacate be issued prior to the decision of the hearing officer or the hearing panel having been mailed or delivered to the complainant. Such notice to vacate must be in writing and specify that if the tenant fails to quit the premises within the applicable statutory period, or on the termination date stated in the notice of termination, whichever is later, appropriate action will be brought against him and he may be required to pay court costs and attorney fees."

2. W.Va.Code, 55–3A–1, *et seq.*, provides for summary relief for wrongful occupation of residential rental property.

3. 24 C.F.R. § 880.607(a) and (b) provide:

   "(a) *Applicability.* The provisions of this section apply to all decisions by an owner to terminate the tenancy of a family residing in a unit under Contract during or at the end of the family's lease term.

   "(b) *Entitlement of Families to occupancy*— (1) *Grounds.* The owner may not terminate any tenancy except upon the following grounds:

   "(i) Material noncompliance with the lease;

   "(ii) Material failure to carry out obligations under any State landlord and tenant act; or

   "(iii) Other good cause, which may include the refusal of a family to accept an approved modified lease form.... No termination by an owner will be valid to the extent it is based upon a lease or ... provisions of State law permitting termination of a tenancy solely because of expiration of an initial or subsequent renewal term. All terminations must also be in accordance with the provisions of any State and local landlord tenant law and paragraph (c) of this section."

accepting the tenant's rent payments is ordinarily controlled by state law. *East Lake Management & Dev. Corp. v. Irvin*, 195 Ill.App.3d 196, 141 Ill.Dec. 279, 551 N.E.2d 272 (1990); *Housing Auth. for La-Salle County v. Little*, 64 Ill.App.3d 149, 21 Ill.Dec. 25, 380 N.E.2d 1201 (1978); *Housing Auth. of Town of Lake Providence v. Allen*, 486 So.2d 1064 (La.App. 1986); *Housing Auth. of Town of Lake Providence v. Burks*, 486 So.2d 1068 (La. App.1986); *Corcoran Management Co. v. Withers*, 24 Mass.App. 736, 513 N.E.2d 218 (1987); *Brockton Hous. Auth. v. Williams*, 14 Mass.App. 955, 437 N.E.2d 1085 (1982); *Minneapolis Community Dev. Agency v. Powell*, 352 N.W.2d 532 (Minn.App.1984); *Greenwich Gardens Assocs. v. Pitt*, 126 Misc.2d 947, 484 N.Y.S.2d 439 (1984); *Akron Metro. Hous. Auth. v. Myers*, 30 Ohio App.3d 100, 30 O.B.R. 199, 506 N.E.2d 933 (1986).[4]

The precise issue in this case is whether DHA has waived its right to enforce the breach of the lease arising from Ms. Nesmith's failure to correctly report family income and composition. Our cases have recognized the general rule that a landlord may waive a claim of lease forfeiture, if, with knowledge of the forfeiture,[5] the landlord continues to accept rent, as indicated by Syllabus Point 3 of *Hukill v. Myers*, 36 W.Va. 639, 15 S.E. 151 (1892):

> "If, after such rental has accrued and is not paid, whereby a forfeiture exists, the lessor with knowledge thereof receives the rentals accruing after forfeiture, he waives and can not enforce the forfeiture."[6]

■ This statement in *Hukill* might be taken as dictum, since the Court found that the landlord had in the past accepted late rent payments and, therefore, had waived his right to claim a forfeiture when the rent payment was late.[7] A more elaborate discussion of this area of the law was made by Justice Haymond in *Fredeking v. Grimmett*, 140 W.Va. 745, 760, 86 S.E.2d 554, 563 (1955):

> "The well established general rule is that a lessor waives his right to forfeit a lease or is estopped from enforcing a forfeiture for a breach of covenant or condition in a lease when, after such breach of covenant or condition, he accepts subsequently accruing rent from his tenant with knowledge or full notice of such breach, unless there are circumstances to negative the presumption of his affirmance of the continuance of the lease which arises from his acceptance of rent[.]"

■ We have not had occasion to determine what circumstances are sufficient, in the words of *Fredeking*, "to negative the presumption of his affirmance of the continuation of the lease which arises from his acceptance of rent." In *Jefpaul Garage Corp. v. Presbyterian Hospital of New York*, 61 N.Y.2d 442, 474 N.Y.S.2d 458, 462 N.E.2d 1176 (1984), New York's highest court identified one obvious circumstance, stating that where the lease has a nonwaiver clause to the effect that the landlord does not waive a breach of the lease by accepting rent with knowledge of such breach, courts generally hold that the acceptance of rent is not a waiver. The court in *Jefpaul* pointed out that to hold other-

---

**4.** These courts have not explicitly made this statement, but have, in fact, applied their state law.

**5.** Courts have generally concluded that a landlord's acceptance of rent will not waive a lease breach which is not known to the landlord. *See* 49 Am.Jur.2d *Landlord & Tenant* § 1069 (1970).

**6.** *Hukill* involved late payment of rentals. It appears that where the lease is breached by failure to pay the rent, courts are more likely to equate the landlord's acceptance of rent with waiver of the breach. *See* Annot., 39 A.L.R.4th 1203 (1985).

**7.** This is spelled out in Syllabus Point 2 of *Hukill*:

> "In case of such a lease, if the lessor by his conduct clearly indicates, that payment will not be demanded when due, and thus lulls the lessee into a feeling of security and throws him off his guard, and because of this he does not make payments when due, the landlord can not suddenly without demand or notice declare a forfeiture, and there is no forfeiture which equity would recognize, and if there is in such case technically a forfeiture at law, equity would relieve against it."

wise would "frustrate the reasonable expectations of the parties embodied in a lease[.]" 61 N.Y.2d at 446, 474 N.Y.S.2d at 460, 462 N.E.2d at 1178. *See also Slater v. Krinsky,* 11 Mass.App. 941, 416 N.E.2d 983 (1981); *Minneapolis Community Dev. Agency v. Powell, supra; First Union Management, Inc. v. Slack,* 36 Wash.App. 849, 679 P.2d 936 (1984).

 Some courts have determined that where the tenant has refused to vacate the premises upon being given notice of breach of lease conditions, the landlord may accept rent for the holdover occupancy without waiving his claim of breach. *See T.H. Properties v. Sunshine Auto Rental, Inc.,* 151 Ariz. 444, 728 P.2d 663 (App.1986); *Riverside Dev. Co. v. Ritchie,* 103 Idaho 515, 650 P.2d 657 (1982); *Chertkof v. Southland Corp.,* 280 Md. 1, 371 A.2d 124 (1977); *Haack v. Great Atlantic & Pac. Tea Co.,* 603 S.W.2d 645 (Mo.App.1980). *See generally* 49 Am.Jur.2d *Landlord & Tenant* § 1071 (1970); Annot., 109 A.L.R. 1267 (1937). Moreover, in recognition of the diverse facts that can exist within the landlord-tenant relationship, it is generally accepted that whether the landlord has waived a breach of the lease by accepting rent is a question of intent based on the particular facts of the case. *See Shannon & Luchs Co. v. Tindal,* 415 A.2d 805 (D.C. App.1980); *Chertkof v. Southland Corp., supra; Brockton Hous. Auth. v. Williams, supra; Haack v. Great Atlantic & Pac. Tea Co., supra; Jefpaul Garage Corp. v. Presbyterian Hosp. of New York, supra.*

In the present case, we believe the trial court erred in holding that DHA waived its right as a matter of law. It is true that DHA accepted rent for a considerable period of time after the initial notice to vacate. However, DHA also continued to pursue vigorously its eviction remedies. The record does not disclose whether the lease contained a nonwaiver clause, which would allow the DHA to accept rent without waiving a breach of the lease. If such a provision existed, it could well be dispositive of this case. Even in the absence of such a clause, with DHA vigorously pursu-

ing its eviction remedies, the waiver by acceptance of rent would be a question of intent under all the surrounding facts.

For the foregoing reasons, we find dismissal of the action to have been erroneously granted and remand this case for further development consistent with the principles stated herein.

Reversed and remanded.