OPINION OF THE COURT
John W. Fried, J.
This is a summary proceeding to recover possession of real property, pursuant to article 7 of the Real Property Actions and Proceedings Law. The real property at issue is apartment 1 at 35 Main Street in the Village of Ossining (the premises).
The verified petition alleges, in part, that respondent’s Section 8 lease ended on October 31, 2013, after petitioner caused respondent to be served, on September 27, 2013, with a notice of termination, and that respondent is “holding over.” Petitioner seeks a judgment awarding it possession of the premises, a war *401 rant of eviction, past rent, a sum of money for respondent’s fair use and occupancy of the premises after October 31, 2013, and costs and disbursements.
Instead of answering the petition, respondent has moved to dismiss the petition, pursuant to CPLR 404 and 3211 (a) (2) and (7). Petitioner has opposed that motion. Because respondent’s motion raised questions of fact as to whether petitioner had complied with the notice of termination provisions of 24 CFR 982.310, the court ordered a hearing, which was held and completed on December 19, 2013. At that hearing, Linda Einfrank, petitioner’s managing member, testified, and respondent Shelly Thornton testified. Based on the evidence admitted at the hearing and the parties’ papers,[1] the court makes the following findings of fact and conclusions of law.
On November 1, 2007, the owner of the premises, respondent, and Marilyn D. Geraldo, as director of the Village of Ossining Section 8 Program, executed a standard-form U.S. Department of Housing and Urban Development (HUD) housing assistance payments contract and residential lease for the premises, the initial term of which expired on October 31, 2008. After that date, respondent became a month-to-month tenant.
The Section 8 Program came into existence as part of the Housing and Community Development Act of 1974. (42 USC § 1437 et seq.) Congress intended the program to provide decent, affordable housing to low-income families. Section 8 Programs give landlords rental subsidies for each qualified tenant who occupies an approved housing unit. These units must meet certain minimal habitability standards and have rent limitations. Families are accepted for the program on the basis of their income: only a family whose annual income does not exceed 80% of the median income for the area in which the family lives is eligible. As rent, a Section 8 tenant must pay either 30% of the family’s monthly adjusted income or 10% of the family’s gross monthly income, whichever of the two amounts is greater. (42 USC § 1437a [a] [1].) A HUD-approved public housing agency, such as, in this case, the Village of Ossining Section 8 Program, pays the balance of the rent with federal funds. That way, a Section 8 family is not forced to choose between food, shelter, and clothing when allocating its limited resources. (Williams v New York City Hous. Auth., 1994 WL 323634, *1, 1994 US Dist LEXIS *402 9058, *2 [SD NY, July 5, 1994, No. 81 Civ. 1801 (RJW)]; Greenwich Gardens Assoc. v Pitt, 126 Misc 2d 947 [Nassau Dist Ct 1984].)
On September 27, 2013, petitioner’s process server personally served respondent with a 30-day “Notice of Termination.” That process server also was one of two Town of Ossining constables who, in that capacity, were the court’s enforcement officers. (See UJCA 110.) The process server did not serve respondent with the notice of termination in his capacity as the court’s enforcement officer.
The notice of termination advised respondent that her tenancy would terminate on October 31, 2013, for the following reason: “Landlord’s business and economic reasons in that the landlord wants to renovate the apartment and to re-rent it for a higher rent.”
Thereafter, on November 6, 2013, petitioner caused respondent to be served personally with the above-referenced notice of petition and verified petition, which included a copy of the previously served notice of termination.[2] When filed with the court on November 8, 2013, those pleadings did not include an affidavit that the notice of termination, notice of petition, and petition were served on the Village of Ossining’s Section 8 Office.
Duties of the Court’s Enforcement Officers
Before deciding respondent’s motion, the court believes it is important to the parties and to the community to address the propriety of the court’s enforcement officers serving process, as private process servers, within the Town of Ossining and/or on behalf of litigants before the court.
In a town of the first class, such as the Town of Ossining, the Town Board may appoint
“not more than four civil officers who shall possess all the powers and duties of constables in civil actions and proceedings only, and [who] shall be paid no salary by the town board but shall be entitled to collect the statutory fees allowed by law in such civil actions and proceedings.” (Town Law § 20 [1] [a].)
At its 2013 reorganizational meeting, held of January 8, 2013, the Town Board reappointed two “Justice Court-Town Con *403 stables.” Thereafter, the court reappointed those two constables, as well as the Westchester County Sheriff, as the court’s “enforcement officers.” (See UJCA 110 [a] [1].) A justice court enforcement officer
“shall perform the same duties as are performed by sheriffs in courts of record and shall have, within their territorial jurisdiction and subject to any limitations imposed by law or by the rules, such power to serve and execute the processes and mandates of the court as a sheriff has with regard to the processes and mandates of the supreme court.” (UJCA 110 [a].)
In other words,
“these civil enforcement officers have the same power to serve and execute the processes and mandates of the town court as sheriffs have with respect to the processes and mandates of Supreme Court. UJCA §§ 110 (a), 701 (b). They receive the same statutory fees for their services as sheriffs would for performing like services in Supreme Court. Id. § 1911 (b); see, e.g., CPLR 8011 (fixed fees of sheriffs). While service of process may be made either by the enforcement officers or other persons as authorized by the CPLR,[3J the court’s mandates are to be executed by the enforcement officers enumerated in section 110 of the UCJA. See UJCA § 701 (a), (d).” (2006 Ops Atty Gen No. 2006-7 at 2.)
Here, the private process server who served respondent with the notice of termination was one of the court’s enforcement officers. Although there is no allegation that the notice of termination was not served as stated in the affidavit of service, the court believes an appearance of impropriety may exist when one of its enforcement officers, who is a public servant, also serves process as a private process server within the court’s territorial jurisdiction and/or on behalf of litigants before the court. (Rules Governing Judicial Conduct [22 NYCRR] § 100.2 [A] [“A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary”].) When people see an enforcement officer serving process, including those served, they are entitled to be assured that they are witnessing the *404 conduct of a public servant and not that of an agent of a litigant in a civil case. If an enforcement officer wants to maintain a service of process business in the jurisdiction in which he or she serves as a justice court enforcement officer, that person should resign from or not accept that public service position. It is for that reason that the court previously instructed its enforcement officers that they may no longer serve process, as private process servers, either within the Town of Ossining or outside the town with respect to civil cases that will be adjudicated by the court. The court’s enforcement officers, in their official capacities, may continue to serve and execute the processes and mandates of the court, including, in summary proceedings, with their fees compensated pursuant to CPLR 8011.[4]
Respondent’s Motion to Dismiss the Petition
Respondent’s motion raises three grounds supporting a dismissal of the petition. First, because respondent is a Section 8 tenant, the notice of termination failed to comply with federal law, specifically 24 CFR 982.310 (“Owner termination of tenancy”), in that it failed to specify the lease provision respondent allegedly breached. Second, the grounds for termination are frivolous and unlawfully discriminatory, in violation of Westchester County’s Fair Housing Law. Third, by accepting the December rent from the Section 8 Office, petitioner has waived its right to evict respondent. For the reasons explained below, respondent’s motion to dismiss is denied.
Petitioner’s Alleged Failure to Comply with 24 CFR 982.310
The parties agree that the lease of a Section 8 tenant can be terminated only in compliance with 24 CFR 982.310, entitled “Owner termination of tenancy.” That federal regulation specifies some of the grounds that a landlord must allege and prove in order to terminate the lease of a Section 8 tenant. Those grounds include:
“(1) Serious violation (including but not limited to failure to pay rent or other amounts due under the lease) or repeated violation of the terms and conditions of the lease;
*405 “(2) Violation of federal, State, or local law that imposes obligations on the tenant in connection with the occupancy or use of the premises; or
“(3) Other good cause.” (24 CFR 982.310 [a].)
The phrase “Other good cause” is defined to include the following examples:
“(i) Failure by the family to accept the offer of a new lease or revision;
“(ii) A family history of disturbance of neighbors or destruction of property, or of living or housekeeping habits resulting in damage to the unit or premises;
“(iii) The owner’s desire to use the unit for personal or family use, or for a purpose other than as a residential rental unit; or
“(iv) A business or economic reason for termination of the tenancy (such as sale of the property, renovation of the unit, or desire to lease the unit at a higher rental).” (24 CFR 982.310 [d] [1] [emphasis added].)
With exceptions, “other good cause” grounds to terminate a lease are not available during the lease’s initial term. (24 CFR 982.310 [d] [2].)
Here, and not during the initial term of respondent’s Section 8 lease, the petition asserts, as “other good cause” grounds for terminating the lease, that for business and economic reasons, petitioner is terminating the lease “to renovate the apartment and to re-rent it for a higher rent.” (Petition ¶ 4, exhibit A.) Respondent argues that because the grounds to terminate the Section 8 lease do not specify the breach of any provision of the lease, the proceeding should be dismissed. Respondent cites no authority for that argument. This summary proceeding was not brought because respondent breached the lease. In fact, based on the hearing, respondent appears to be in full compliance with the terms of the lease. Instead, petitioner has decided to terminate the lease in order to renovate the premises so that it can be leased at a higher rent which, according to 24 CFR 982.310 (d) (1) (iv), is “other good cause” to terminate a Section 8 lease. That “other good cause” is fairly explained in the notice of termination. Respondent’s cited authority, Chinatown Apts. v Chu Cho Lam (51 NY2d 786 [1980]), is distinguishable. In that case, the Court of Appeals affirmed the dismissal of a petition to dispossess because it failed to cite any provision in the lease, which the landlord alleged the tenant had breached by constructing a freestanding, cube-like *406 structure in the center of a room in the leased apartment. Here, petitioner does not seek to terminate respondent’s tenancy due to a breach of her Section 8 lease.
Initially, respondent challenged whether petitioner had given the Ossining Section 8 Office a copy of the notice of termination, as required by 24 CFR 982.310 (e) (2) (ii). Although no affidavit of such service on the Section 8 Office was filed, at the hearing respondent conceded that the notice was, in fact, provided to that office. In any event, even if petitioner had failed to give the Section 8 Office a copy of the notice of termination, such a failure would not have been a jurisdictional defect requiring the dismissal of the petition. (Rippy v Kyer, 23 Misc 3d 130[A], 2009 NY Slip Op 50652[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2009].)
Accordingly, because petitioner substantially complied with 24 CFR 982.310, respondent’s first ground for dismissal is denied.
The Grounds for Termination are Frivolous and Unlawfully Discriminatory
Respondent next argues that petitioner’s grounds to terminate the lease, for “business and economic reasons ... to renovate the apartment and to re-rent it for a higher rent,” is a “ruse either for Petitioner’s unlawful refusal to continue to accept Respondent’s Section 8 subsidy, or for some other unknown reason,” and that, even if petitioner intends to renovate respondent’s apartment, the petition fails to allege that respondent must be evicted from the premises in order for the renovation to proceed. (Marrone affirmation ¶¶ 9-14.)
At the hearing, Ms. Einfrank testified that, in December 2012, petitioner started to renovate and has since completed the renovation of other apartment units in the residential building where the premises are located. According to Ms. Einfrank, petitioner’s plans with respect to the premises include a complete renovation of the kitchen, with new cabinets, counter-tops, appliances and floor, estimated to take one to four months to complete, and the plans also include a complete renovation of the bathroom, with a new bathtub, toilet, shower and sink, estimated to take three weeks to two months to complete, during which time the bathroom would not be usable. Because respondent presented no evidence that might cause the court to question Ms. Einfrank’s credibility, the court finds that petitioner’s grounds to terminate the Section 8 lease are not a ruse or a wily subterfuge by which to free petitioner from the lease.
*407 In a somewhat related argument, respondent contends that petitioner is precluded from evicting her “based upon her source of income as such would constitute discrimination against source of income which is prohibited by the June 26, 2013 amendment to the Westchester County Fair Housing Law.” (Marrone affirmation ¶ 15.) The stated general purpose of the Fair Housing Law
“is to promote the availability and accessibility of housing and real property to all persons; to prohibit unlawful discriminatory real estate practices in real property transactions, whether direct or indirect, which deny those persons equal rights and opportunities in acquiring, disposing of, or occupying real property; to provide enforcement mechanisms for the accomplishment of such purpose; and to this end the provisions of this law shall be liberally construed. The role of the Fair Housing Board, in conjunction with the Westchester County Human Rights Commission, shall be to enforce the provisions of this law in furtherance of this policy.” (Westchester County Code § 700.19 [A].)
To achieve that purpose, the law identifies and makes unlawful certain discriminatory real estate practices. (Westchester County Code § 700.21.)
In 2013, the definition of “group identity” in the Fair Housing Law was amended to add the phrase, “source of income.” (Local Law No. 3-2013 of County of Westchester.) Under the new definition, “group identity” means “the race, color, religion, age, national origin, alienage or citizenship status, ethnicity, familial status, creed, gender, sexual orientation, marital status or disability of a person or persons, a person’s source of income, or a person’s status as a victim of domestic violence, sexual abuse, or stalking.” (Westchester County Code § 700.20 [H] [emphasis added].) That 2013 amendment also defined “source of income,” as it relates to unlawful discriminatory real estate practices, as “lawful, verifiable income derived from social security, or any form of federal, state or local public assistance or housing assistance, grant or loan program, including the federal housing subsidy known as ‘Section 8’, any disability payment, and assistance, grant or loan program from a private housing assistance organization.” (Westchester County Code § 700.20 [V].)
With those 2013 amendments to the Fair Housing Law, and as pertinent here, it is unlawful for anyone “to refuse to continue to rent, lease, sublease or otherwise to deny to or withhold from any person or group of persons, such a housing ac *408 commodation because of that persons actual or perceived group identity [including ‘sources of income’],” and “[t]o discriminate against any person because of that person’s actual or perceived group identity [including ‘sources of income’], in the terms, conditions or privileges of a transaction involving any such housing accommodations.” (Westchester County Code § 700.21 [A] [2], [3] [emphasis added].)
Upon a finding by the Fair Housing Board of unlawful discrimination in real estate practices on the basis of source of income, the Board may impose a civil penalty, in an amount not to exceed $50,000 if the practice is found to be willful, wanton or malicious. (Westchester County Code § 700.29 [B] [1] [f-1].)
Here, respondent has presented no factual basis, either by affidavit or at the hearing, to support her defense of an unlawful discriminatory real estate practice, in violation of the Fair Housing Law (Westchester County Code § 700.21). Also, it appears that petitioner’s residential building, containing the premises, is exempted from the law (Westchester County Code § 700.21 [C] [1] [b]). Finally, the law cannot and does not empower a justice court to enforce it. Accordingly, respondent’s motion to dismiss the petition on the grounds that the termination of lease is frivolous and is unlawfully discriminatory is denied.
Whether Petitioner has Waived its Right to Evict Respondent
Respondent’s third and last argument is that petitioner’s acceptance of rent for December 2013, both from the Section 8 Office and from her, which was after petitioner commenced this summary proceeding on November 8, 2013, constituted a waiver of its right to continue this summary proceeding. To the contrary, the acceptance of rent or consideration for use or occupancy after the commencement of a proceeding neither terminates the litigation nor affects any award of possession to the landlord. (RPAPL 711 [1]; 2657 E. 68th St. Corp. v Bergen Beach Yacht Club, 161 Misc 2d 1031, 1032-1033 [Civ Ct, Kings County 1994].)
Accordingly and for the foregoing reasons, it is hereby ordered that respondent’s motion to dismiss is denied, and further ordered that petitioner serve respondent’s counsel and submit a form of judgment awarding it possession of the premises, a warrant of eviction, both of which shall be stayed for 30 days, and a bill of costs with respect to the costs and disbursements of this proceeding as are allowed by the Uniform Justice Court Act.

. See respondent’s motion to dismiss, dated Dec. 4, 2013; petitioner’s opposition, dated Dec. 5, 2013; letter, with enclosure, of Lori Lee Dickson, Village of Ossining corporation counsel, dated Dec. 17, 2013.

. That service was not made by either of the court’s two enforcement officers.

. Generally, any person older than 18, who is not a party to the action or proceeding, may serve papers. (CPLR 2103 [a].)

. The “fees” identified in article 80 of the CPLR are the sums of money-fixed by statute and payable to a court or a court-related officer, such as a sheriff or justice court enforcement officer, for the taking of some official action during litigation. (See David D. Siegel, NY Prac § 413 at 726 [5th ed 2011].)